[No. 33922. Department Two. December 19, 1957.]

FRED DOWELL, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

[1]Reported in 319 P. (2d) 843.

*The Attorney General, Alfred J. Bianchi* and *Walter F. Robinson, Jr., Assistants,* for appellant.

*Walthew, Oseran, Warner & Keefe,* for respondent.

DONWORTH, J.—This is an appeal by the department of labor and industries from a judgment entered on a jury verdict awarding an injured workman compensation for permanent partial disability in addition to the amount awarded him by the board of industrial insurance appeals.

Respondent suffered an industrial injury to his back on January 31, 1952. On February 18, 1952, he filed a report of the injury with appellant, and his claim was allowed. On August 11, 1954, appellant entered an order closing the claim with an award equal to twenty per cent of the maximum allowed for unspecified permanent partial disabilities. Respondent appealed to the board of industrial insurance appeals, which held hearings and then entered a decision affirming appellant's order of August 11th. Respondent then appealed to superior court. The jury returned a verdict that the board had not decided the case correctly; that respondent was not totally disabled; and, that his *additional* disability amounted to sixty per cent of the maximum allowed for unspecified disabilities. Judgment was entered on the verdict.

There are two assignments of error. The first is directed to the trial court's denial of appellant's motion that the appeal from the board's decision be dismissed for lack of jurisdiction on the ground that it had not been taken to the superior court of the proper county. RCW 51.52.110, which vests appellate jurisdiction in workmen's compensation cases in the superior courts, provides, in part, as follows:

"In cases involving injured workmen such appeal shall be to the superior court of the county of residence of the workman or beneficiary, or to the superior court of the county wherein the injury occurred."

■ The phrase, "county of residence of the workman," means the county of his residence at the time the appeal is taken, not at the time the injury occurred. *Tennyson v. Department of Labor & Industries*, 189 Wash. 616, 66 P. (2d) 314 (1937).

■ In the present case, the appeal was taken to the superior court for Cowlitz county. In support of its motion for dismissal, appellant introduced affidavits from various witnesses which tended to show that the industrial accident occurred in Lewis county, and that respondent resided in Lewis county at the time the appeal was taken. However, we do not consider the question presented for the reason that appellant has failed to include these affidavits in the statement of facts. We have repeatedly held that affidavits in support of a motion may not be considered by this court unless, by certificate of the trial judge, they are made part of the record by inclusion in the statement of facts. It is not sufficient that they are included in the clerk's transcript. *Sizemore v. Department of Labor & Industries*, 36 Wn. (2d) 520, 219 P. (2d) 120 (1950); *State ex rel. Lucas v. Superior Court*, 193 Wash. 74, 74 P. (2d) 888 (1937); *Ice Delivery Co. v. Davis*, 137 Wash. 649, 243 Pac. 842 (1926); *Hendrix v. Hendrix*, 101 Wash. 535, 172 Pac. 819 (1918); *Kuykendall v. Lambie*, 99 Wash. 366, 169 Pac. 853 (1918).

Appellant next contends that the trial court erred in refusing to dismiss respondent's case for lack of sufficient evidence when motions were made prior to trial and at the close of the evidence, and in refusing to grant judgment

notwithstanding the verdict. The issue thus presented is whether the evidence was legally sufficient to support the jury's award of additional compensation for permanent partial disability.

The undisputed evidence showed that on January 31, 1952, when he was working as a timber faller for the Long-Bell Lumber Company, respondent felt a sharp pain in his lower spine while making a hard swing with an ax. He finished out the day, but experienced such discomfort that evening that he was admitted to a hospital in Chehalis by Dr. Wilbur J. Dugaw. He was hospitalized for four days and treated with heat and traction for a disc protrusion. On February 11, 1952, he attempted to return to work but found that the pain in his back was too great. He resumed treatment from Dr. Dugaw, and later came under the care of Dr. J. C. Woodward, Jr., who made a myelogram study of his spine. On August 25, 1952, Dr. Woodward performed an operation on respondent's back, which required him to be hospitalized for forty-four days. Following the operation, respondent received therapy treatments from a Dr. Field, but discontinued them because they were too painful. In August, 1953, respondent was again hospitalized for ten days by Dr. Woodward, and was placed in traction and a body cast.

Respondent testified that he did not work for wages between February 11, 1952, and August, 1954; that he was able to do a little work around his home, but that he felt a constant ache in his spine; that physical activity caused a "jumping" pain in his legs, arms, shoulders, and head; and that he had difficulty in lifting and bending.

Four medical witnesses testified to the extent of respondent's disability. Their testimony may be summarized as follows:

(1) Dr. Dugaw testified that he last examined respondent on September 3, 1954, twenty-three days after the closing date, and that respondent's condition was then "undoubtedly the same" as it had been on the closing date. He described various objective symptoms and gave the opinion that respondent was "totally disabled." On cross-examina-

tion, when asked if there were no gainful work whatsoever that respondent could do, he testified as follows:

"A. That is any kind of employment, you mean? Q. That is right. A. No, could probably do something. Q. In other words, you would say that there are probably several types of employment that he could do? A. Oh yes. Q. Would it be fair to state that, in your opinion, he is able to do types of employment which do not require heavy lifting or bending? A. I'd have to alter that a little bit. He can't stand other things, I mean other things than heavy lifting. He certainly couldn't stand for any time, do any stooping. Probably not any sitting for any period."

(2) Dr. Woodward, who last saw respondent more than four months before the closing date, testified that in his opinion the disability amounted to twenty per cent of the maximum allowed for unspecified injuries.

(3) Dr. S. N. Berens, who examined respondent about two months before the closing date, testified, by deposition, in general agreement with Dr. Woodward.

(4) Dr. J. Harold Brown, who examined respondent about five weeks after the closing date, testified that in his opinion respondent's condition was not fixed and that he was in need of further treatment.

■ (5) In addition, Dr. Woodward testified that a Dr. Hafner had examined respondent in January, 1954, and had concluded that respondent "might be considered to be totally disabled." Although this evidence was hearsay, it may be considered because no proper objection was made to it. *Merritt v. Department of Labor & Industries*, 41 Wn. (2d) 633, 251 P. (2d) 158 (1952).

Appellant contends that the above-summarized medical testimony does not include anything on which the jury could base its finding of sixty per cent additional disability, since none of the doctors testified *in terms of percentage* to any disability greater than twenty per cent. Appellant urges that permanent partial disability and permanent total disability are clearly distinguishable; that the greater does not include the lesser; and that, for this reason, the jury could not compromise between Dr. Dugaw's opinion that

respondent was "totally disabled" (and Dr. Hafner's apparent opinion to the same effect) and the opinions of Drs. Berens and Woodward that he suffered only a twenty per cent partial disability.

We do not agree with this contention. Permanent partial disability is a partial incapacity to work as measured by loss of bodily function; permanent total disability is the inability to work at any gainful occupation. See RCW 51-.08.150 and 160. Although the two concepts are different, they are alike in that both involve loss of working ability due to an industrial injury. Dr. Dugaw, in stating the respondent was "totally disabled," was testifying, in effect, that respondent's loss of bodily function was great enough to prevent his working at any gainful occupation. He then modified his testimony, on cross-examination, by saying that respondent could work at something, but was unable to do any stooping or heavy lifting, and could not stand or sit for any length of time. This testimony described a very high degree of permanent partial disability, even though it was not expressed in terms of percentages.

We have held that the extent of a workman's disability must be determined by medical testimony, and that only medical men are qualified to give opinions on the extent of partial disability in terms of percentages. *Harper v. Department of Labor & Industries*, 46 Wn. (2d) 404, 281 P. (2d) 859 (1955); *Clayton v. Department of Labor & Industries*, 48 Wn. (2d) 754, 296 P. (2d) 676 (1956). It does not follow from these holdings, however, that a medical witness *must* express his opinion on disability in terms of percentage. On the contrary, he should, under the statute, testify by comparing an unspecified disability to the scheduled disability which it most resembles. RCW 51.32.080(2) provides, in part, as follows:

"Compensation for any other permanent partial disability shall be in the proportion which the extent of such other disability, called unspecified disability, shall bear to that above specified, which most closely resembles and approximates in degree of disability such other disability, but not in any case to exceed the sum of six thousand dollars: . . . ."

The question of the extent of partial disability is ultimately for the jury as the trier of fact. Expert testimony on the extent of an unspecified disability need not be in the language of the statute; it may be probative even though it is not couched in terms of comparison to a scheduled injury. *Ziniewicz v. Department of Labor & Industries,* 23 Wn. (2d) 436, 161 P. (2d) 315 (1945). As in the case of an other jury question, the jury in an industrial insurance appeal may arrive at a verdict that lies between the opinions of the expert witnesses who have testified. Nothing compels the jury to accept the exact opinion of any one of two or more experts who disagree.

Appellant cites, as authority for its position that this record contains insufficient evidence to support the verdict, *Harper v. Department of Labor & Industries, supra,* and *Hyde v. Department of Labor & Industries,* 46 Wn. (2d) 31, 278 P. (2d) 390 (1955). Neither of these cases is in point, for each of them turned on the fact that the expert testimony relied upon by the jury did not relate to the date on which the department closed the claimant's case. Appellant also cites *Kaiser Aluminum & Chemical Corp. v. Department of Labor & Industries,* 45 Wn. (2d) 745, 277 P. (2d) 742 (1954), where we held that the board of industrial insurance appeals may not rely on its past experience in evaluating an injury. In that case, the board announced in its written decision that it had decided the case on the basis of past experience as well as on expert testimony. There is no showing in the present case that the jury relied on anything other than the expert testimony which it heard.

The testimony of Dr. Dugaw that respondent was "totally disabled" was contradicted by his statement, on cross-examination, that there were jobs which respondent could probably do. However, in adding that respondent could do no heavy lifting or stooping, and, in fact, could not even stand or sit continuously for any length of time, he supplied evidence which supports the jury's award of an additional sixty per cent of the maximum allowed for

unspecified disabilities. There is nothing in our decisions to justify appellant's contention that Dr. Dugaw's testimony was valueless because he did not testify in terms of percentage. The jury in this case was not limited to an award of twenty per cent in the face of substantial medical testimony, based upon repeated examinations which disclosed objective symptoms, describing a higher degree of disability.

The trial court properly allowed the issue of the extent of respondent's disability to go to the jury, and the judgment entered upon the verdict is therefore affirmed.

HILL, C. J., ROSELLINI, and FOSTER, JJ., concur.

