[No. 510-2. Division Two. July 10, 1972.]

RAY E. FOCHTMAN, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

*Joe Gordon, Jr.* (of *Gordon, Thomas, Honeywell, Malanca, Peterson, O'Hern & Johnson*), for appellant.

*Slade Gorton, Attorney General,* and *Tracy B. Madole, Assistant,* for respondent.

ARMSTRONG, J.—Plaintiff, Ray E. Fochtman, appeals from a judgment granting defendant's motion to dismiss on the

basis of insufficiency of the evidence to support a jury verdict. The judgment affirmed a decision of the Board of Industrial Insurance Appeals. The Board of Industrial Insurance Appeals had sustained an order of the Department of Labor and Industries, which closed plaintiff's claim with a permanent partial disability award of 20 per cent loss of function of the right arm at the shoulder.

Plaintiff contends he is totally and permanently disabled as a result of his industrial injury superimposed upon a preexisting condition of grand mal epilepsy and mental limitations. He maintains that he had only a marginal ability to function in the general labor market before the serious right shoulder injury, but that after the injury he was not able to work at any gainful employment with any reasonable degree of continuity.

The primary issue in this appeal involves a matter of first impression in this jurisdiction: whether the opinion of a qualified vocational consultant, based upon proven and assumed medical facts of loss of function and severe limitations imposed upon claimant's ability to work, together with personal evaluation and testing of the claimant, is sufficient to support a finding of total disability within the meaning of RCW 51.08.160. The trial court held that it was not because a claim of total disability must be based upon a physician's conclusion to that effect. We disagree.

The relevant statute is RCW 51.08.160 which defines permanent total disability as follows:

> "Permanent total disability" means loss of both legs, or arms, or one leg and one arm, total loss of eyesight, paralysis *or other condition permanently incapacitating the workman from performing any work at any gainful occupation.*

(Italics ours.)

The portion of the statute which is not italicized identifies specific disabilities from which total disability is presumed as a matter of law. The italicized portion relates to total disability which must be established by the facts of the case bearing upon the workman's employability.

Since the department challenged the sufficiency of the evidence to take the question of permanent disability to the jury, we are faced with the rule that such a challenge admits the truth of the opposing party's evidence and all inferences that can reasonably be drawn therefrom and requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the party against whom the motion is made. *Holland v. Columbia Irrigation Dist.*, 75 Wn.2d 302, 450 P.2d 488 (1969). If the evidence offers room for a difference of opinion in the minds of reasonable men on the issue of total disability, resulting from the injury, the case must be submitted to the jury. *Kuhnle v. Department of Labor & Indus.*, 12 Wn.2d 191, 120 P.2d 1003 (1942).

Considering the evidence in this manner, we find the following facts established: Plaintiff Ray Fochtman sustained an industrial injury when he fell from an upper bunk and landed on his right shoulder. The fall occurred during an epileptic seizure and resulted in an acromioclavicular separation of the right shoulder.

Plaintiff has undergone three surgeries for his shoulder condition. The first was for the purpose of stabilizing the right shoulder to promote healing by the use of two metal pins, the second for the purpose of removing the metal pins, and the third, a resection of the distal clavicle due to soft tissue calcification associated with the healing process. This has resulted in a permanent substantial limitation of the right shoulder joint. He is right handed. The department closed his claim with an award of 20 per cent loss of function of the right arm at the shoulder.

Before taking the job on which he was injured, plaintiff had done logging work and farm work during his school vacations. The logging work included setting chokers and second loading. The farm work included lifting hay, feeding cows, shoveling manure and driving tractor.

At the time of his injury he was working for Occupational Rehabilitation, Inc. as a tree planter. He was living in a camp in the mountains in the vicinity of Randle, Wash-

ington. Tree planting involves carrying a shovel and a sack of trees weighing 75 to 100 pounds, digging holes and planting the trees.

Plaintiff testified that he has a grinding sensation in his shoulder and if he lifts anything with it or uses it quite a bit it will pain all of the time. He stated that if he does much lifting or pulling it feels like his arm goes out of the socket. He applied for work at different factories and was turned down because of his shoulder. He has had no gainful employment since his shoulder injury.

Plaintiff has his epilepsy under reasonable control with the use of slightly more than normal daily dosage of dilantin and phenobarbital. He had not had a severe seizure for about 17 months prior to his testimony. His attending physician, Dr. John Kanda, stated that because of his epileptic condition he should avoid physical and emotional stress, get 8 hours of sleep a night and should not over-exercise. Because of his condition he should not work in high places or work close to dangerous machines. Before his shoulder injury Dr. Kanda recommended that he take up gardening as a vocation.

Dr. Kanda found that as a result of the injury plaintiff has a very limited use of his right shoulder joint; abduction, adduction and elevation are greatly limited and he could not compete in very heavy work. Other medical evidence established that plaintiff had weakness in his shoulder, not necessarily entirely due to muscle wasting, but weakness accompanied by pain from stress, all of which precluded any "repetitive work above the shoulder level."

The plaintiff then presented the testimony of Frank G. Swinehart, whose primary occupation is vocation and rehabilitation specialist for the State of Washington, Division of Vocational Rehabilitation. Mr. Swinehart has a major in sociology and a minor in psychology. He has completed the academic work for a master's degree and has taken graduate training special courses for the rehabilitation of the handicapped. For 9 years he has been a rehabilitation vocational counselor. For 2 years he served as an educational

counselor for the Industrial Training Institute in Chicago. He has also been a vocational consultant to the Department of Health, Education and Welfare. He has served as an expert witness as to the employability of applicants for Social Security disability benefits. He has acted as a vocational consultant in the Physical, Medicine and Rehabilitation Department of the University of Washington Hospital. He has been certified by the National Rehabilitation Counseling Association, the American Personal Guidance Association and the National Vocational Guidance Association.

Mr. Swinehart conducted various aptitude and intelligence tests on plaintiff to determine what type of work he could do. He also received a history of the injury and considered a hypothetical question which included medical findings and conclusions of Dr. Kanda, and, to some degree, the findings and conclusions of one of the doctors who testified for the department.

Mr. Swinehart found plaintiff's intelligence to be in the dull, normal range. He was substantially below average in finger and hand dexterity. His vocational aptitude was found to be well below the normal range. It was the vocational expert's conclusion that as a result of his shoulder injury, superimposed upon his preexisting epileptic condition and mental limitations, that plaintiff was not employable in the competitive labor market.

Initially we note that the provisions of the workmen's compensation act are not limited in their benefits to persons who are completely free from disease or physical or mental abnormalities. If the injury complained of is the proximate cause of the disability for which compensation is sought, the previous physical condition of the workman is immaterial and recovery may be had for the full disability, independent of any physical or congenital weakness. The theory upon which this principle is founded is that the workman's prior physical condition is not deemed the cause of the injury, but merely a condition upon which the real cause operated. *Miller v. Department of Labor & Indus.,* 200 Wash. 674, 94 P.2d 764 (1939). The preexisting epileptic

condition and mental and dexterity limitations of the plaintiff had rendered him a marginal employee before his injury but he had been employed in various capacities. The question now before this court is whether plaintiff was totally disabled as a result of his injury at the time his claim was closed.

■ The leading case on the character and quantum of evidence required to establish a prima facie case of permanent total disability is *Kuhnle v. Department of Labor & Indus., supra.* The court held that the statutory language requiring the claimant to prove that he is incapable of performing any work at any gainful employment does not require that he be physically helpless. The intent of the act is to insure against loss of wage earning capacity. A workman's wage earning capacity may be destroyed although he still has some capacity to perform minor tasks. A workman is totally and permanently disabled if he is not able to perform work for which he is qualified with a reasonable degree of continuity.

*Kuhnle* adopted the "odd lot" doctrine which is now the rule in virtually every jurisdiction. *See* 2 A. Larson, The Law of Workmen's Compensation § 57.51 (1971). That rule is well summarized in *Lee v. Minneapolis St. Ry.,* 230 Minn. 315, 320, 41 N.W.2d 433 (1950):

> An employe who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled.

■ Applying the *Kuhnle* rule to the facts of this case, including (1) testimony of plaintiff that he was able to work at gainful employment before the injury and unable to do so after the injury because of shoulder pain and inability to find employment because of his shoulder injury, (2) expert medical testimony as to loss of function of the shoulder and severe limitations placed upon his ability to work, and (3) expert vocational testimony based upon the plaintiff's history, personal testing, assumed medical facts,

and the vocational consultant's conclusion that as a result of his injury plaintiff is not employable in the competitive labor market, we find a prima facie case of total disability. We do not pass on the merits of the case. Considering the testimony most favorable to the plaintiff and disregarding evidence to the contrary, we conclude that reasonable men might believe that plaintiff was totally and permanently disabled as a result of his injury.

The department contends, however, that it has been long established that a prima facie case of permanent total disability cannot be established without a medical rating of such disability. The department also contends the opinion of a vocational consultant cannot be considered as expert testimony to establish that conclusion. The trial court accepted that contention. We do not agree.

In our analysis of the question of the necessity for the medical conclusion of total disability we are indebted to the critique and commentary of the Honorable J. Harris Lynch which appears in the "Digest of Leading Washington Cases on Workmen's Compensation Law" published by the Board of Industrial Insurance Appeals in 1970. Mr. Lynch was the chairman of the board from 1954 until his retirement in 1967. Thereafter, the board utilized his keen legal mind and extensive experience as board chairman and as a hearing examiner in the preparation of that digest, which is also valuable as a critique and a commentary. The original edition is almost exclusively the product of Mr. Lynch's manuscript.

In considering whether a *medical conclusion* of permanent total disability is necessary to establish a prima facie case, we must first direct our attention to the theory of workmen's compensation. It is then necessary to distinguish the underlying differences and considerations in permanent partial disability as compared to permanent total disability.

The theory upon which our workmen's compensation law is predicated is that the injured workman has sustained a loss of earning capacity. In the case of permanent partial disability the legislature has taken the loss of earning

power into account in prescribing, in dollars, the compensation to be paid for certain specified as well as unspecified disabilities. The trier of fact, however, merely determines the loss of bodily function in determining the extent of permanent partial disability. *Franks v. Department of Labor & Indus.*, 35 Wn.2d 763, 215 P.2d 416 (1950). Two individuals who have the same loss of function of the back would be entitled to the same permanent partial disability award although one had a much higher income than the other. The loss of a finger may have little effect on men of many trades, but a most serious effect to a pianist or a stenotypist—yet each would receive the same loss of function award.

The determination of loss of function in a permanent partial disability case is necessarily a medical question. Medical testimony is necessary to establish permanent partial disability. *Page v. Department of Labor & Indus.*, 52 Wn.2d 706, 328 P.2d 663 (1958).

There is a different quantum and character of proof in a total disability case. Total disability is inability, as the result of a work-connected injury, to perform or obtain work suitable to the workman's qualifications and training. Total disability is not a purely medical question. It is a hybrid quasi-medical concept in which there are intermingled in various combinations, the medical *fact* of loss of function and disability, together with the inability to perform and the inability to obtain work as a result of his industrial injury. A workman may be found to be totally disabled, in spite of sporadic earnings, if his physical disability, caused by the injury, is such as to disqualify him from regular employment in the labor market. Indeed, if the injury has left the workman so disabled that he is incapable of becoming a workman of acceptable capacity in any well-known branch of the labor market—if his capacity to work is no longer a merchantable article in the labor market—it is incumbent upon the department to show that such special employment can, in fact, be obtained by him. *Kuhnle v. Department of Labor & Indus., supra;* 2 A. Lar-

son, The Law of Workmen's Compensation §§ 57 and 57.71 (1971).

Proof of permanent total disability is more individualized than proof of permanent partial disability. The testimony necessarily requires a study of the whole man as an individual—his weakness and strengths, his age, education, training and experience, his reaction to his injury, his loss of function and other relevant factors that build toward the ultimate conclusion of whether he is, as a result of his injury, disqualified from employment generally available in the labor market. In the ultimate determination of whether the injured workman can maintain gainful employment in the labor market with reasonable continuity we find the testimony of a vocational or employment expert both relevant and admissible. *See Lee v. Minneapolis St. Ry., supra.*

Traditionally, total disability cases have been proved by lay testimony of the injured workman and fellow employees, together with medical testimony as to the *facts* of loss of function and disability as well as the doctor's *conclusion* that the injured workman is totally permanently disabled. We do not disagree with that method of proof, but we do question whether most doctors are familiar with intricacies of the labor market.

We think the doctor's usual expertise would be especially taxed with that aspect of the *Kuhnle* rule which provides that if an accident leaves the workman in such a condition that he can no longer follow his previous occupation or any similar occupation, and is fitted only to perform special work not generally available, the burden is on the department to show that there is special work that he can in fact obtain. This would appear to be more within the expertise of the vocational consultant.

Although we do not exclude other testimony, we find that testimony of a vocational consultant or employment expert who would consider medical evidence of loss of function and physical impairment, his own findings obtained in testing the injured workman, facts relative to the labor market, and his conclusion as to whether the injured

workman was so handicapped as a result of the injury that he could not be employed regularly in any recognized branch of the labor market, is desirable, relevant and admissible to establish total disability.

Turning next to the department's contentions that the Washington Supreme Court has consistently held that the testimony of medical experts is necessary to establish a prima facie case of total disability as defined by RCW 51.08.160, we would agree that the court, in numerous cases, has held that lay testimony alone is insufficient to establish a rating of total permanent disability. We do not agree that the court has excluded the possibility of proving a case by lay testimony, medical testimony describing loss of function and physical disability, together with a final conclusion by a vocational consultant or employment expert that the workman is totally disabled as that term is defined under the *Kuhnle* rule. The courts of this jurisdiction have not considered that question.

We will refer to the total permanent disability cases cited by the department to illustrate our conclusion. There have been few permanent total disability cases which have made reference to the necessity of medical testimony. Many permanent partial disability cases have discussed it but we do not consider them in point on our specific question.

In *Weinheimer v. Department of Labor & Indus.*, 8 Wn.2d 14, 111 P.2d 221 (1941), the court held that the medical evidence in support of the action of the joint board was unanimous. The only evidence opposed to the finding of the medical authorities was the testimony of the claimant as to his condition. Although the court stated, "In cases of this kind, the actual facts must be determined from the testimony of the medical witnesses."; the court did not expressly state that the medical testimony must be expressed in terms of a *conclusion* that the workman is totally permanently disabled to warrant a jury finding to that effect. In essence, the court held that medical testimony that a workman is precluded from engaging in his former occupation and is restricted to light work is not sufficient to

justify a finding of permanent total disability if it is supported only by the claimant's testimony that he knew of no work he could do to earn a living. *See* Comment at page 217, Digest of Leading Washington Cases in Workmen's Compensation Law.

The department relies strongly upon *Johnson v. Department of Labor & Indus.*, 45 Wn.2d 71, 273 P.2d 510 (1954). That was an aggravation of disability case. The particular language in question is contained at page 75:

> We do not consider it necessary to refer in detail to all of appellant's objective and subjective symptoms. We have read with care the testimony of all the witnesses, and, viewing the testimony in the light most favorable to appellant, considering as true all competent evidence favorable to him and drawing all reasonable inferences therefrom in his favor, we are unable to find *a sufficient showing by medical testimony of appellant's total and permanent disability*, nor of any percentage of aggravation of his disability, during the period between January 10, 1949, and March 12, 1951. We, therefore, hold that the trial court was correct in granting respondent's motion for judgment n.o.v. and dismissing the action.

(Italics ours.)

We find ourselves in complete agreement with the comment on that case which appears at page 227 of the Digest of Leading Washington Cases on Workmen's Compensation Law:

> *Comment*: Although this decision appears to constitute a holding that medical testimony of total permanent disability is necessary to support a claim for benefits for such disability, the holding in that regard is obscured by the fact that the claimant did present a medical witness who so testified, although he did not examine the claimant until long after the terminal date in issue and the court had previously noted that the medical testimony had to be directed to that date, and by the further fact that there was a failure of proof of aggravation. The question still remains unclarified as to whether medical testimony as to severe limitations imposed on a claimant's ability to work coupled with lay testimony concerning his age, education, training and experience, or even testimony by

employment experts, may not be sufficient to permit a finding of permanent total disability without the conclusion of a medical witness in those terms.

We conclude that a prima facie case of total disability may be established by medical testimony as to severe limitations imposed on a claimant's ability to work coupled with lay testimony concerning his age, education, training and experience and the testimony of an employment or vocational expert as to whether he is able to maintain gainful employment on the labor market with a reasonable degree of continuity. If those conditions are met the medical expert need not make the *conclusion* that the injured workman is totally and permanently disabled.

The department argues that even if we were to reach such a conclusion the testimony of the vocational consultant does not establish total disability for two reasons: (1) the vocational consultant stated that plaintiff could work in a sheltered workshop situation, and (2) he stated that plaintiff was "not employable in the competitive work market" and the test is ability to perform work and not ability to obtain work.

The vocational expert defined a sheltered workshop as employment of a substandard nature in that it pays less than a remunerative competitive job would pay and allows people with various types of handicaps to at least function on their own level. The department argues that at the time of his injury plaintiff was in a sheltered workshop situation. As to this contention we find there was a jury question presented as to whether a sheltered workshop situation as described, is gainful employment under the *Kuhnle* rule and a jury question as to whether planting trees in the mountains is a sheltered workshop. Furthermore, we cannot ignore the plaintiff's work experience in setting chokers and second loading before he obtained his last employment.

Turning now to the last contention that the vocational specialist's testimony that plaintiff is "not employable in the competitive work market" does not meet the test of total disability, we find that the *Kuhnle* case disposes of

that contention. At 12 Wn.2d 191, 198 the *Kuhnle* court, in discussing total permanent disability, quoted with approval from another jurisdiction:

The phrase quoted does not imply an absolute disability to perform any kind of labor. It requires a practical and reasonable interpretation, as is illustrated by the familiar rule that *inability to obtain work, caused by an injury, is classed as total incapacity.* . . . One who is disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is ordinarily regarded as totally incapacitated.

(Italics ours.)

Reversed and remanded for a new trial.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied August 22, 1972.