[No. 987-2. Division Two. March 8, 1974.]

HARRY ORR, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

*Hollis B. Small* (of *Combs & Small*), for appellant.

*Slade Gorton, Attorney General,* and *John J. Blake, Assistant,* for respondent.

ARMSTRONG, J.—On August 20, 1968, claimant Harry Orr sustained an injury to his low back and groin area while working as a general handyman and forklift operator for Lindall Cedar Homes. The industrial injury occurred when claimant twisted his back and strained his groin while removing a table saw top from a pickup truck with a hoist. He received treatment and his claim was closed with an award of 15 percent of the maximum amount allowed for unspecified disabilities, for a psychiatric condition.

Claimant appealed this award to the Board of Industrial Insurance Appeals. The Board reversed the Department of Labor and Industries and awarded claimant 40 percent of the maximum amount allowed for unspecified permanent partial disability for his psychiatric condition. Claimant appealed to the superior court, contending that he had a greater disability to his back on an organic basis. He contended that he was totally and permanently disabled as a result of his injury and alternately presented in testimony a rating of 100 percent of the maximum amount allowed for permanent partial disability for his back condition.

The facts reveal that claimant suffered his first low back injury in June 1955. He then reinjured his low back on November 3, 1955. He was hospitalized at that time, was off work for 30 days, and was treated for a prolonged period. He filed a claim for one of the 1955 injuries. His claim was closed with no award for permanent partial disability. Although he returned to work wearing a back brace, the original claim was never reopened. As a result of other injuries, he sustained permanent disabilities to other parts of his body, not relevant to this appeal.

At the trial based upon the 1968 injury, the court submitted a total disability instruction but declined to submit a permanent partial disability instruction. The jury did not grant a pension and the claimant has not presented this court with any issue related thereto.

The assignments of error raise the issue of the court's failure to submit an instruction explaining permanent partial disability and failure to submit the following interrogatory:

INTERROGATORY No. 3:
What was the extent of the permanent partial disability that Harry Orr had for organic problems on or about November 2, 1970, as a proximate result of his industrial injury of August 20, 1968?
ANSWER:............................% (Not to exceed 60% of the maximum allowable for unspecified disabilities).

It is the department's position that the court was correct in not submitting the permanent partial disability instruction and interrogatory because the claimant's doctor did not segregate, in accordance with RCW 51.32.080(3), the preexisting disabling low back disability from the amount of low back disability claimant sustained as a result of his 1968 injury. That statute provides:

Should a workman receive *an injury* to a member or *part of his body already, from whatever cause, permanently partially disabled,* resulting in the amputation thereof or in an aggravation or increase in such permanent partial disability but not resulting in the permanent total disability of such workman, *his compensation* for such partial disability *shall be adjudged with regard to* the previous disability of the injured member or part and *the degree or extent of the aggravation or increase of disability thereof.*

(Italics ours.)

 Claimant argues that his medical witness did evaluate the permanent partial disability in his low back at 100 percent of the maximum amount allowed for unspecified disabilities caused by the 1968 injury, superimposed upon a preexisting back problem. Citing *Miller v. Depart-*

*ment of Labor & Indus.*, 200 Wash. 674, 94 P.2d 764 (1939), claimant contends that it was not necessary to segregate because the 1968 injury made active and "lighted up" a latent or dormant preexisting condition and therefore all of the disability is attributed to the injury rather than the preexisting condition. The landmark *Miller* case, cited by claimant, reiterated a long line of prior decisions, holding at page 682 that:

if an injury, within the statutory meaning, lights up or makes active a *latent or quiescent infirmity* or *weakened physical condition occasioned by disease*, then the resulting disability is to be attributed to the injury, and not to the preexisting physical condition.

(Italics ours.) The court in *Miller* further held at page 684, that the *requirement* of segregation:

is applicable only to cases in which the workman already is, *in fact*, permanently partially disabled within the meaning of the workmen's compensation act, but that it does not apply when the preexisting weakened or congenital condition, independent of the subsequent injury, has not, in any way, incapacitated the workman or has not, of itself, constituted a disability.

The weakened or congenital condition in question in this case was an additional or sixth lumbar vertebra. Over the years it has caused claimant's sacrum to attempt to become part of his spine. The disc interspace above this additional vertebra is practically obliterated. The cartilage at that level is damaged. The result is a restriction in the degree to which claimant's low back can bend forward.

If this is congenital anomaly and its resulting degenerative changes, or any other condition in his low back, did not permanently and manifestly diminish the claimant's utilization of his natural faculties, which may of course include interference with his working capacity, prior to the 1968 injury, it would not have been proper to require a segregation of that preexisting condition as a prior "permanent partial disability" within the contemplation of RCW 51.32.080(3).

We shall now consider the evidence to ascertain whether the structural weakness or other low back condition was disabling at the time of his 1968 injury. We first note that following his 1955 injuries he was fitted with a back brace. In spite of wearing the brace he continued to have back complaints, as was evidenced by the following cross-examination:

Q Mr. Orr, you stated you had a back injury in 1955?
A Yes.
Q What part of your back was injured?
A In the low part of my back.
Q Have you had, *since 1955,* had problems with that portion of your back? [Italics ours.]
A Ever since.
Q You've had what, nagging backache?
A Nagging backache. When I bend over, anything like that, or lift anything like that, it gives me trouble. It just throbs.
Q Even lifting rather light weight?
A Not so much light weight. It just depends upon the position I'm in, I'll say that.

Claimant's low back problems restricted the type of work he could perform prior to his 1968 injury. In 1967, after he had been off work for an unrelated injury, the Washington State Highway Department informed him that he could no longer drive heavy equipment. However, the Highway Department offered him a job as a gardener. Claimant could not accept the offer, according to his testimony, because "my legs and back just wouldn't let me do that. I had to refuse." His leg problems referred to in that statement were caused by other injuries and are unrelated to this discussion. Claimant's counsel argues that Dr. Dille attributed all of the low back disability to the injury in 1968 and rated it at 100 percent of the unspecified permanent partial disability. A careful reading of all of the testimony of Dr. Dille, however, demonstrates that he rated the workman's entire back condition from whatever cause as he found it in his examination on January 18, 1971. Mr. Orr acknowledged that prior to the 1968 injury he had continu-

ing symptoms in his low back which in some ways incapacitated him. It is clear that his condition was not dormant, inactive or quiescent. It therefore became incumbent upon claimant's doctor to segregate the preexisting disability from the disabling condition he found in claimant's back at the time of his examination in 1971. The doctor's testimony established only his opinion of claimant's overall back disability at the time of his examination. To predicate a finding of permanent partial disability upon that testimony would have been misleading to the jury because the jury could not designate the amount of permanent partial disability attributed solely to the last injury. *Allen v. Department of Labor & Indus.*, 48 Wn.2d 317, 293 P.2d 391 (1956).

■■ Claimant argues that since there was substantial evidence of total disability it necessarily follows that the whole is the sum of its parts, and therefore the evidence is sufficient to sustain a lesser award. That was the theory of Justice Foster in the dissenting opinion in *Page v. Department of Labor & Indus.*, 52 Wn.2d 706, 713, 328 P.2d 663 (1958). We can conceive of situations in which that argument would logically follow. It would have to be predicated, however, on a situation in which there was no prior disability to the part of the body injured by the accident in question. The problem of proving this premise lies in the difference between proving total disability by the "whole man" concept as delineated in *Kuhnle v. Department of Labor & Indus.*, 12 Wn.2d 191, 120 P.2d 1003 (1942), and more recently by our court in *Fochtman v. Department of Labor & Indus.*, 7 Wn. App. 286, 499 P.2d 255 (1972);[1] as contrasted with the "loss of function" test employed in determining permanent partial disability discussed in

---

[1] A total disability instruction should be based upon the definition of total disability contained in *Kuhnle v. Department of Labor & Indus.*, 12 Wn.2d 191, 120 P.2d 1003 (1942) and *Fochtman v. Department of Labor & Indus.*, 7 Wn. App. 286, 499 P.2d 255 (1972). The "odd lot" doctrine should be clearly spelled out.

*Franks v. Department of Labor & Indus.*, 35 Wn.2d 763, 215 P.2d 416 (1950).[2]

For example, "the greater including the lesser" theory is illustrated in *Dowell v. Department of Labor & Indus.*, 51 Wn.2d 428, 319 P.2d 843 (1957). In that case the claimant sustained a back injury resulting in a herniated disc. The department awarded him 20 percent of the maximum amount allowed for unspecified permanent partial disability. One medical witness rated him as totally disabled. The jury awarded him 60 percent of the maximum amount allowed for unspecified disabilities. On appeal the department contended that permanent partial disability and permanent total disability are clearly distinguishable and that "the greater does not include the lesser." The Supreme Court did not agree with this contention under the factual pattern presented therein. The court simply held that a total permanent disability evaluation due solely to the injury did support an additional permanent disability award. The *Dowell* court further noted the claimant's doctor, on cross-examination, "described a very high degree of permanent partial disability, even though it was not expressed in terms of percentages." *Dowell v. Department of Labor & Indus., supra* at 433.

The critical distinction between the case at bench and the *Dowell* case is that the total disability award in *Dowell* was based on the back injury in question in the appeal and there was no preexisting back disability which would require segregation for a permanent partial disability award. In the case at bench the total disability award was predicated upon evidence supporting the various combined effect concepts of the "whole man" test of *Kuhnle* and *Fochtman,* and that evidence, without segregation, is not sufficient to make out a case for permanent partial disability.

---

[2]As pointed out in *Franks v. Department of Labor & Indus.*, 35 Wn.2d 763, 775, 215 P.2d 416 (1950), permanent partial disability is measured by loss of bodily function, but a jury can also take into consideration whether defendant is prevented from carrying on his normal work or occupation.

Claimant relies upon the cases of *Page v. Department of Labor & Indus., supra; Allison v. Department of Labor & Indus.,* 66 Wn.2d 263, 401 P.2d 982 (1965); and *Thompson v. Department of Labor & Indus.,* 2 Wn. App. 785, 470 P.2d 224 (1970).

Claimant quoted a portion of the *Page* case to the effect that where two experts disagree as to the amount of disability, the jury may arrive at a verdict between the opinions. While this is a correct principle of law it does not apply to this case. That principle applies when experts disagree as to the amount of disability *due to the workman's injury.* In the case at bench the claimant's medical witness did not evaluate any specific amount of disability in his low back attributable solely to the 1968 injury. The department's medical witness, by contrast, determined that the injury did not aggravate the prior disabling condition, and thus he concluded all of claimant's low back problems were due to the preexisting disability.

Claimant cites the *Allison* case because the court there held it was error to let the workman choose to omit the permanent partial disability issue and submit to the jury an "all or nothing" question of total disability. The court decided that such a procedure deprived the department of a defense and that a permanent partial disability instruction and interrogatory should have been given. The court did not decide, however, that in all cases where there is total disability testimony, the partial disability interrogatory must be given. It required such an interrogatory only where there is substantial evidence to support a permanent partial disability theory.

In *Allison* the court noted that the evidence would sustain an award from zero to 100 percent permanent partial disability and would also support a pension. In the instant case there was no substantial evidence to support a partial disability award due to the 1968 injury. Dr. Dille's total disability rating was based on claimant's psychiatric disability, age, education, preexisting anomaly, prior injuries and similar factors which make up the *Kuhnle* "whole

man" test of employability. Dr. Dille's permanent partial disability rating was based upon claimant's overall low back disability as he found it after his last injury. He did not segregate the *low back disability* which was in existence prior to the date of claimant's 1968 injury.

Finally, claimant contends that his cause is supported by *Thompson v. Department of Labor & Indus., supra.* The *Thompson* court held that the facts in the case did not involve a segregation issue and RCW 51.32.080(3) did not apply. At page 788 the court stated:

> The statute applies to injuries of a body part previously injured and so does not apply to respondent Thompson in his claim for compensation for aggravation of the 1961 injury to the lower back which had not been permanently partially disabled prior to that time.

We conclude that there was not substantial evidence to permit a jury to establish any given amount of permanent partial disability to claimant's back attributable to the 1968 injury because he had a preexisting back disability which was not segregated in his medical rating. *Beyer v. Department of Labor & Indus.,* 17 Wn.2d 29, 134 P.2d 948 (1943); *Voshalo v. Department of Labor & Indus.,* 75 Wn.2d 43, 449 P.2d 95 (1968); *Corak v. Department of Labor & Indus.,* 2 Wn. App. 792, 469 P.2d 957 (1970).

Judgment affirmed.

PEARSON, C.J., and PETRIE, J., concur.