[No. 1512-3.    Division Three.    November 4, 1976.]

PEGGY ANTHIS, *Appellant*, v. THE DEPARTMENT OF LABOR
AND INDUSTRIES, *Respondent.*

*Norman W. Cohen, Graham, Cohen & Wampold,* and *John C. Carlson,* for appellant.

*Slade Gorton, Attorney General,* and *Robert M. Knies, Assistant,* for respondent.

GREEN, J.—Claimant, Peggy Anthis, appeals from a judgment entered upon a jury verdict upholding a decision of the Board of Industrial Insurance Appeals.

On June 11, 1970, claimant was injured during the course of her employment when a ladder fell upon her as she was preparing to thin some pears. A claim was filed with the Department of Labor and Industries and after authorized treatment it was closed on March 22, 1971. Due to aggravation, the claim was reopened and again closed on November 11, 1971, with an award for permanent partial disability of 10 percent of the maximum allowable for unspecified disabilities. The Board of Industrial Insurance. Appeals increased the award to 25 percent. On appeal to the Superior Court, a jury upheld that award. She now appeals to this court.

Error is assigned to (1) the refusal to give a proposed interrogatory; (2) the exclusion of portions of one witness' testimony. We reverse.

The court instructed the jury, in part, as follows:

### INSTRUCTION NO. 25

This is a civil action and requires only five of you to agree upon a verdict. Your verdict in the cause will be in the form of answers to the following interrogatories.

INTERROGATORY NO. I:

Was the Board of Industrial Insurance Appeals correct in determining that, as of August 15, 1973, Mrs. Anthis was not in need of further treatment for her injury of June 11, 1970, that she was capable of performing gainful employment on a reasonably continuous basis, and that her disability did not exceed 25% of the maximum allowed for unspecified injuries?

ANSWER: _____ (Yes or No)

If your answer to Interrogatory No. I is "yes" you will answer no further interrogatories. If your answer to Interrogatory No. I is "no" you will answer Interrogatory No. II.

INTERROGATORY NO. II:

On or about August 15, 1973, as a proximate result of her industrial injury of June 11, 1970, was Mrs. Anthis capable of obtaining and performing gainful employment on a reasonably continuous basis?

ANSWER: _____ (Yes or No)

If your answer to Interrogatory No. II is "no" you will not answer any further interrogatories. If your answer to Interrogatory No. II is "yes", you will answer Interrogatory No. III.

INTERROGATORY NO. III:

On or about August 15, 1973, was Mrs. Anthis in need of further treatment for her injury of June 11, 1970?

ANSWER: _____ (Yes or No)

The jury answered "yes" to interrogatory No. 1 and was thereby relieved of answering the other interrogatories.

First, claimant assigns error to instruction No. 25 for failure to include its proposed interrogatory No. 4:

INTERROGATORY NO. IV:

Expressed in percentage terms, what was Mrs. Anthis' permanent partial disability on or about August 15, 1973, proximately resulting from her injury of June 11, 1970?

ANSWER: _____ % (not less than 25%)

It is claimant's position that instruction No. 25 without

interrogatory No. 4 limited the jury to a choice between finding permanent total disability under other instructions or permanent partial disability of 25 percent of the maximum allowable for unspecified disabilities awarded by the board. Claimant contends that since the record creates a question of the extent of her partial disability and would support an award greater than the board's award, if the jury so found, the refusal to give proposed interrogatory No. 4 was error because instruction No. 25 precluded submission of that issue to the jury. We agree.

RCW 51.32.080, the statute in effect at the time of claimant's injury, provides a method for computing an award for permanent partial disability. First, the statute sets forth the amounts to be awarded for various *specified* injuries, and second, outlines the method for computing the amounts to be awarded for *unspecified* injuries as follows, in subsection (2):

> Compensation for any other permanent partial disability . . . shall be in . . . the proportion which the extent of such other disability, called unspecified disability, shall bear to that above specified, which most closely resembles and approximates in degree of disability such other disability . . .

Here, claimant suffered from an unspecified physical and psychiatric injury, and by comparison to the schedule of specified injuries in RCW 51.32.080, the board concluded that she should receive 25 percent of the maximum specified for "Loss By Amputation . . . Of arm at or above the deltoid insertion or by disarticulation at the shoulder."

The propriety of the trial court's refusal to give claimant's proposed interrogatory No. 4 depends upon whether there is evidence from which the jury could have increased the percentage awarded by the board. To answer this question, we turn to the record.

The department's expert witnesses, Drs. Bocek, McCarthy, and Gottlieb, testified that claimant's permanent partial disability was 10 percent of the maximum allowable for unspecified disabilities. Dr. McCarthy, a psychiatrist, made no allowance for psychiatric disability.

Claimant called two expert witnesses, one of whom was Dr. McDermott, a psychiatrist, who testified:

Q. Doctor, if you were to place percentage disability rating on her psychiatric disability as you found it, what kind of percentage rating would you put on it?

A. I placed 15 percent on it.

Q. *Would that be 15 percent of the whole person or what?*

A. *I think that would be the best way to describe it.* It's hard from the psychiatric standpoint to talk about anything but the whole person because it's the whole functioning individual that I am looking at. I am looking at their ability to function as a human being and work at home or anywhere else and that's a reasonable figure.

Q. How would you compare this percentage disability reading with a loss of an arm, for example, greater or lesser?

A. Do you mean in the psychological impact of it?

Q. I shouldn't have asked it that way. You have stated that she has a percentage disability as a person to function. *Would the loss of an arm cause a greater impairment of function than psychiatric disability which you have diagnosed?*

A. It—you've got to take them case by case, but in this case *I think she could probably deal better if she lost an arm than she could with basic personality problem. That's more disabling.*

(Italics ours.) [1]

On cross-examination he testified:

Q. I didn't understand, Doctor, what your 15 percent rating ultimately reflected. Was that total, 15 percent total bodily impairment that you recommended?

A. Yes.

Q. That took into account her home life and her personal

---

[1]The department argues that in effect Dr. McDermott's opinion was that "her industrial injury affected her psychologically more than the loss of an arm would have affected her psychologically." While the department could make this argument to the jury in an effort to minimize his testimony, we believe the testimony is more properly susceptible of meaning functional disability. The department does not challenge the admissibility of the testimony, only the interpretation that the jury should give it.

life and other than her vocational life, let us say, her work life that represents her total permanent disability to her whole life, is that correct?

A. That's what I'm saying, yes.

Claimant contends that although Dr. McDermott did not use the precise statutory language, the essence of his testimony is that she suffered a permanent partial disability greater than the loss of an arm by amputation, *i.e.*, more than the maximum allowable for unspecified disability. On the other hand, the department argues that the jury was properly instructed because the board correctly increased the award by 15 percent, for a total of 25 percent of disability, since 15 percent is the only comparable figure stated by Dr. McDermott. We disagree with the department.

■ The failure of an expert witness to testify in the language of the statute is not fatal. In accepting the testimony of two experts in *Ziniewicz v. Department of Labor & Indus.*, 23 Wn.2d 436, 442, 161 P.2d 315 (1945), the court said:

> The argument that the two experts did not compare respondent's disability with any specified disability, therefore their testimony has no probative value, is without merit. While the two witnesses did not use the language of the statute, their language is plain. It would not, we stated in *Gavin v. Everton*, 19 Wn. (2d) 785, 144 P. (2d) 735, be a salutary rule to require a witness to couch his testimony in the phraseology of our opinions. Nor would it be a salutary rule to require witnesses to use the language of the statute.

Likewise, in *Dowell v. Department of Labor & Indus.*, 51 Wn.2d 428, 434, 319 P.2d 843 (1957), the court stated:

> The question of the extent of partial disability is ultimately for the jury as the trier of fact. Expert testimony on the extent of an unspecified disability need not be in the language of the statute; it may be probative even though it is not couched in terms of comparison to a scheduled injury.

Based on the testimony of the expert witnesses, the jury was entitled, as the trier of fact, to determine the extent of permanent partial disability between 10 percent and 100

percent of the maximum allowable for unspecified disabilities. Since the record would support an award greater than that found by the board, the rule relied on by the department as applied in *Nash v. Department of Labor & Indus.*, 1 Wn. App. 705, 462 P.2d 988 (1969), and *Orr v. Department of Labor & Indus.*, 10 Wn. App. 697, 519 P.2d 1334 (1974), is not applicable.

Second, with respect to claimant's contention that the court erred in excluding certain remarks by Dr. Gottlieb, we find no error. The department's hearing officer permitted the witness to comment when claimant's counsel was objecting to certain testimony. Such comments had no probative value for the jury, were irrelevant and properly excluded by the trial court.

On remand, the sole issue to be submitted to the jury is the extent of permanent partial disability. The question of permanent total disability was answered adversely to the claimant and should not be resubmitted to the jury, nor should the other issues contained in interrogatories Nos. 1, 2, and 3. Therefore, the only question for the jury upon retrial is the extent of the claimant's permanent partial disability.

Reversed and remanded.

McINTURFF, C.J., and MUNSON, J., concur.