[No. 31867-5-I.   Division One.   June 20, 1994.]

LEOLA M. WILLIAMS, *Appellant*, v. VIRGINIA MASON MEDICAL CENTER, *Respondent*.

*Thomas A. Thompson* and *Walthew, Warner, Costello, Thompson & Eagan, P.S.,* for appellant.

*Kathleen A. Anamosa* and *Davis Wright Tremaine,* for respondent.

*Christine O. Gregoire, Attorney General,* and *John R. Wasberg, Assistant,* for State.

[As amended by order of the Court of Appeals September 29, 1994.]

GROSSE, J. — Leola Williams appeals the judgment entered after a jury verdict in favor of Virginia Mason Medical Center in Williams' appeal from an order of the Board of Industrial Insurance Appeals (BIIA). The BIIA's order affirmed the order of the Department of Labor and Industries (L&I) closing Williams' industrial insurance claim and awarding her 20 percent permanent partial disability. Williams claims that the trial court erred in its instructions to the jury and by allowing L&I to participate at trial. We hold that the trial court erred in its instruction concerning voluntary retirement and accordingly reverse and remand the matter for a new trial.

I

"Voluntary retirement" is defined in the industrial insurance regulations as follows:

(1) For the purpose of this title a claimant will be deemed to be voluntarily retired and no longer attached to the work force if all of the following conditions are met:

(a) The claimant is no longer receiving income, salary or wages from any gainful employment.

(b) The claimant has provided no evidence, if requested by the department or the self-insurer, of a bona fide attempt to return to gainful employment after retirement.

(2) Payment made by the worker or on his or her behalf in the form of premiums, for the purpose of continuation of life or medical insurance coverage, union dues or similar payments shall not constitute attachment to the work force.

(3) The claimants of new or reopened claims will not be deemed voluntarily retired if the injury or occupational disease was a proximate cause of the decision to retire and sever the attachment to the work force.

WAC 296-14-100.

The jury was instructed as to voluntary retirement as follows:

If you find that Ms. Williams is voluntarily retired, and is no longer attached to the work force, then you must conclude that she is not eligible for permanent total disability benefits.

A claimant is deemed to be voluntarily retired and no longer attached to the work force if: (a) the claimant is no longer receiving income, salary or wages from any gainful employment; and (b) the claimant has provided no evidence of a bona fide attempt to return to gainful employment after retirement.

Williams claims that this instruction did not contain a complete statement of the law and was prejudicial and misleading. Williams' proposed instruction essentially embodied subsection (3) of WAC 296-14-100:

A worker is deemed to be voluntarily retired and no longer attached to the workforce if the following condition is met:

1. The worker's injury or occupational disease was not a proximate cause of the decision to retire and sever the attachment to the work force.

■ We review a challenged jury instruction to determine whether it permits the parties to argue their theories of the case, whether it is misleading, and whether the instructions when read as a whole accurately inform the jury of the applicable law. *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 36, 864 P.2d 921 (1993).

■ Whether Williams' injury was the proximate cause of her decision to retire was a significant issue in the case. However, the jury was not instructed on whether a claimant who retires because of his or her injury is deemed voluntarily retired. The applicable law as to this issue is contained in WAC 296-14-100(3) and in Williams' proposed instruction, neither of which was given to the jury. We conclude that the instructions, when read as a whole, did not accurately inform the jury of the applicable law as to voluntary retirement, and were therefore inadequate and necessitate a new trial.[1]

## II

Williams claims that the trial court erred by permitting instruction 12 because it contained a misstatement of the law, and was confusing and prejudicial. The instruction stated:

> If a worker's condition is such that she would otherwise be totally disabled, but through reasonable effort she is retrainable so that she could perform gainful employment, then you are instructed such disability is not permanent.

Williams' argument focuses on two concepts: (1) temporary, as opposed to permanent, disability; and (2) total, as opposed to partial, disability. She claims that "permanent" and "temporary" refer only to whether the claimant's medical condition is fixed and stable, and have nothing to do with the claimant's ability to engage in gainful employment. She argues that "total" and "partial" address the claimant's ability or inability to work, and that therefore the last word of instruction 12 should have been "total" rather than "permanent". Although we agree that instruction 12 confuses these terms of art, we conclude that, in light of the other instructions given, any error was not prejudicial. However, since the matter must be remanded

---

[1] We note that while the instruction given combined with Williams' proposed instruction would contain a complete statement of the applicable law, a jury instruction that simply related the text of WAC 296-14-100 would be a better, and more artfully worded, alternative.

for a new trial, we will discuss the issue presented so that on remand the inaccuracies and inartful language in instruction 12 can be remedied.

The jury was asked to decide whether Williams was permanently totally disabled when L&I closed her claim and awarded her permanent partial disability benefits. The relevant terms were "permanent total disability" and "permanent partial disability".

"Permanent total disability" is statutorily defined as:

> loss of both legs, or arms, or one leg and one arm, total loss of eyesight, paralysis or other condition permanently incapacitating the worker from performing any work at any gainful occupation.

RCW 51.08.160.

"Permanent partial disability" is statutorily defined as:

> the loss of either one foot, one leg, one hand, one arm, one eye, one or more fingers, one or more toes, any dislocation where ligaments were severed where repair is not complete, or any other injury known in surgery to be permanent partial disability.

RCW 51.08.150.

Permanent partial disability has been defined in case law as a partial incapacity to work as measured by loss of bodily function. *Dowell v. Department of Labor & Indus.*, 51 Wn.2d 428, 433, 319 P.2d 843 (1957); *Cayce v. Department of Labor & Indus.*, 2 Wn. App. 315, 316, 467 P.2d 879 (1970). Permanent total disability is the inability to work at any gainful occupation. *Dowell*, 51 Wn.2d at 433.

Both concepts involve the loss of working ability due to an industrial injury or condition which is "permanent", that is, an injury or condition which is fixed, lasting, stable, and not remediable. *Hiatt v. Department of Labor & Indus.*, 48 Wn.2d 843, 846, 297 P.2d 244 (1956). The concepts differ, however, insofar as they refer to the claimant's ability to engage in gainful employment. If the claimant cannot engage in any gainful employment, the permanent disability is total; if she can engage in some type of gainful employ-

ment on a reasonably continuous basis notwithstanding her medical condition, the permanent disability is partial.[2]

Here, since the question presented was whether Williams was permanently totally disabled or permanently partially disabled, the determinative issue was her ability to engage in gainful employment. This issue goes to whether the disability was partial or total, not to whether the disability was permanent or temporary. Whether her disability was permanent was not at issue.

Instruction 12, however, addressed a claimant's ability to engage in gainful employment in terms of whether the disability was permanent or temporary. As discussed, the permanent/temporary distinction goes to the issue of whether the claimant's medical condition was fixed and stable, or remediable. To be consistent with the statutory and case law definitions, the last word of the instruction should have been "total" rather than "permanent".

■ However, an erroneous instruction requires reversal only if it is prejudicial, that is, only if the error affects or presumptively affects the outcome of the trial. *Caruso v. Local Union 690, Int'l Bhd. of Teamsters*, 107 Wn.2d 524, 530, 730 P.2d 1299, *cert. denied*, 484 U.S. 815 (1987). Instructions 11 and 13 contained correct explanations of permanent as opposed to temporary disability, and of total disability, respectively. The testimony was unequivocal that Williams' condition was fixed and stable and therefore permanent. The conflict in the testimony centered around whether Williams was able to engage in any gainful employment and whether she voluntarily retired. If the jury found that Williams was able to engage in gainful employment on a reasonably continuous basis, then it would have to find pursuant to instruction 13 that Williams' disability was not total, and pursuant to instruction 12 that it was not permanent. Consequently, the jury had to return a verdict that

---

[2]Under the "odd lot doctrine" a claimant who is able to engage in only limited or minor tasks on a sporadic basis may still be considered permanently totally disabled. *See Kuhnle v. Department of Labor & Indus.*, 12 Wn.2d 191, 120 P.2d 1003 (1942).

Williams was not permanently totally disabled. Even without instruction 12, however, the jury still had to reach the same verdict if it found that Williams was able to engage in gainful employment because, pursuant to instruction 13, it had to find that the disability was not total and that Williams was therefore not permanently totally disabled. Any error in instruction 12 is not reversible because it could not have affected the outcome of the trial.

Even though any error in the instruction was harmless, instruction 12 is confusing because it merges and interchanges concepts from instructions 11 and 13. On remand, if the instruction is used again, it should be reworded so that the terms of art are used in the instruction in a manner consistent with their usage in the other instructions, the statutes, and case law.[3]

### III

Williams contends that the trial court erred by permitting L&I to participate in the trial because L&I lacked standing and had no financial or legal interest in the outcome of the administrative appeal. Her argument is without merit in light of RCW 51.52.110, which addresses appeals of decisions of the BIIA and provides in part:

> If the case is one involving a self-insurer, a copy of the notice of appeal shall also be served by mail, or personally, on such self-insurer. . . . If the case is one involving a self-insurer, such self-insurer shall, within twenty days after receipt of such notice of appeal, serve and file its notice of appearance and such appeal shall thereupon be deemed to be at issue. *In such cases the department may appear and take part in any proceedings.*

(Italics ours.) L&I appeared in all the proceedings before the BIIA and was listed on all documents relating to Williams'

---

[3]Williams also argues that instruction 12 misstates the law by allowing the inference that a claimant is required to expend reasonable efforts to "obtain and complete retraining". We disagree. Neither instruction 12 nor any other instruction states or implies that a claimant has a duty to seek vocational rehabilitation on his or her own. Instruction 12 is silent as to the party responsible for securing rehabilitation and allows the inference that it is the employer's responsibility just as easily as it allows the inference that it is the employee's responsibility. The instruction focuses on the end result of retraining, not on the party responsible for securing retraining.

claim as a party to the appeal. The trial court did not err by allowing L&I to participate.

The decision of the trial court is reversed and the matter is remanded for a new trial.

PEKELIS, A.C.J., and BECKER, J., concur.