[No. 5852-2-III.   Division Three.   March 7, 1985.]

ARTHUR BOLT, ET AL, *Respondents,* v. EDWARD W. HURN, ET AL, *Respondents,* IDEAL BASIC INDUSTRIES, INC., ET AL, *Appellants.*

*Duane M. Swinton* and *Witherspoon, Kelley, Davenport & Toole*, for appellant Ideal Basic Industries.

*Robert Stephen Drummond* and *Brown, Thayer & Drummond*, for appellants Hurn.

*Rodney Reinbold* and *Mansfield, Reinbold & Gardner*, for respondents Bolt, et al.

*Andrew C. Braff* and *Lowry & Braff*, for respondents Hurn.

*R. M. Cooper, Lawrence L. Anderson,* and *Cooper, Wallace, Powell & Giboney*, for respondents Beardslee, et al.

GREEN, C.J.—Arthur Bolt, personally and on behalf of Mountain Meadows Mining Corporation, brought this shareholder derivative action against Ideal Basic Industries, Inc.; Edward W. and Delores Hurn; and Mark W. and Jeanne Beardslee; Verle and Helen Gotham; Merle and Loretta Gotham; and Raymond and Lita Beardslee, d/b/a Beardslee Realty (hereinafter Beardslee); and Arden Tree Farms. Paul J. and Marjorie Hurn and all of the defendants except Arden Tree Farms appeal the judgment entered against them.

The dispositive issue is whether Mr. Bolt had standing to bring a shareholder derivative action.

In 1975 Paul Hurn, Mr. Bolt and Ed Hurn agreed to form Mountain Meadows Mining Corporation. Paul Hurn was to act as president and treasurer, Mr. Bolt as vice–president, and Ed Hurn as secretary–general manager. Both Paul Hurn and Mr. Bolt were to have transferred leases and other properties to the corporation in consideration for the issuance of stock. Paul Hurn invested over

$200,000 in the corporation, but Mr. Bolt never transferred any of the contemplated property. It was agreed Paul Hurn would be issued 51 percent of the stock and Ed Hurn and Mr. Bolt would each receive 16 percent. Mountain Meadows never issued these shares.

Prior to formation of Mountain Meadows, Ed Hurn negotiated a lease with Ideal Basic for what is referred to as the "Evans property". On November 5, 1975, Paul Hurn, as president of Mountain Meadows, signed the lease for a term of 6 months commencing November 15, and ending May 15, 1976, with rent at $100 per month. The lease included an agreement by Mountain Meadows to purchase the property for $30,000, $10,000 to be paid at closing and lease payments to be credited on the purchase price. During the lease term, Paul and Marjorie Hurn signed the rental checks.

On June 26, 1976, Paul Hurn sent Ideal Basic a check with a letter which said, "Please note $1,000.00 to be applied on final payment of purchase price with closing date extended to July 15, 1976 as agreed upon in our conversation of June 22, 1976." The enclosed check was dated June 25, 1976, and contained the following language: "Apply to purchase price of $30,000 Balance $29,000— Evans property." Ideal Basic responded by letter dated June 30, 1976, which stated:

Ideal will extend until July 15, 1976, the deadline for closing of the sale of the Evans County property. The $1,000 payment will be credited toward the final payment on the purchase price. If the sale of the property does not close on July 15, 1976, all payments made by Mountain Meadows to Ideal, a total of $1,700, will be retained by Ideal as lease payments under the terms of a lease agreement between Ideal and Mountain Meadows dated November 5, 1975.

July 15 came and went without Mountain Meadows communicating further with Ideal Basic regarding the purchase agreement or the lease.

Within a week or so after July 15, Ed Hurn called Alan

Wright of Ideal Basic and told him Mountain Meadows was not going to buy the property but that he had come up with the money and wanted to purchase the land himself. On July 27, Ideal Basic agreed to sell the property to Ed Hurn for $30,000 and he paid Ideal Basic $7,000 toward closing the transaction.

Shortly thereafter Mr. Bolt and Paul Hurn learned of the sale of the Evans property to Ed Hurn. On September 22 Ed Hurn listed the property with Beardslee Realty. Mr. Bolt advised Beardslee that Ed Hurn did not own the property; but rather, the property was leased to Mountain Meadows. He provided the realtor with a copy of the lease. However, no action was taken on behalf of Mountain Meadows by any of the shareholders to file the "lease/option to purchase". On December 6 Beardslee Realty purchased the property from Ed Hurn. They in turn conveyed a portion of the property to Arden Tree Farms in January of 1978.

Almost 2 years after the July 15, 1976, lease extension expired, Mr. Bolt commenced this shareholder derivative action on behalf of Mountain Meadows to recover the property purchased and sold by Ed Hurn or damages. On April 20, 1983, judgment was entered in favor of Mr. Bolt and Mountain Meadows.

Ideal Basic, Beardslee and Ed Hurn contend the court erred in determining Mr. Bolt had standing to bring this shareholder derivative action on behalf of Mountain Meadows because he did not have a stock interest at the time he filed the complaint. We agree.

Finding of fact 4 states:

This action was properly brought as a shareholder derivative action on the part of shareholder, Arthur Bolt, to protect the interest of himself as a shareholder and the other stockholders who do not wish to participate in this action.

This is actually a conclusion of law. There are no other findings nor is there evidence in the record to support this conclusion.

CR 23.1[1] imposes four requirements upon an individual who initiates a shareholder derivative action: (1) he must be a shareholder at the time of the transaction of which he complains; (2) the action must not be collusive simply to confer jurisdiction on the court; (3) the complaint must allege the efforts made by the shareholder to compel the board of directors and/or corporate entity to sue, or allege with particularity the reasons why such would be futile; and (4) the shareholder must fairly and adequately represent the interest of other shareholders similarly situated. *See* Trautman, *Joinder of Claims and Parties in Washington,* 14 Gonz. L. Rev. 103, 130–31 (1978); 7A C. Wright & A. Miller, *Federal Practice* §§ 1826–1833 (1972); 3B J. Moore, *Federal Practice* ¶¶ 23.1.17–23.1.20 (1984).

Here Mr. Bolt did not meet the first requirement of CR 23.1, *i.e.,* he is not a shareholder. He alleged in his amended complaint that he owned 16 percent of the shares in Mountain Meadows. However, Mountain Meadows has never issued stock to any person, and Mr. Bolt admits he never transferred any of the promised property to Mountain Meadows in consideration for his claimed ownership of 16

---

[1]CR 23.1 provides:

"In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (a) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (b) that the action is not a collusive one to confer jurisdiction on a court of this state which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs."

percent of the corporation. His only contribution to Mountain Meadows was the use of his D–8 tractor to build a logging road.

Notwithstanding, Mr. Bolt, relying on *LaHue v. Keystone Inv. Co.*, 6 Wn. App. 765, 496 P.2d 343 (1972), contends he may bring this action because he has an equitable interest in the stock. In *LaHue* the court held that a surviving spouse's one–half community interest in stock, which was held in the name of the other spouse prior to his death, was a sufficient interest to give the surviving spouse standing to bring a shareholder derivative suit. *LaHue* is distinguishable as the widow there was an owner and held an interest in the stock of the corporation by virtue of community property principles even though the stock was listed in her husband's name. Here Mr. Bolt had given no consideration for any stock; if he had, and the stock had not been issued, his claim as an equitable owner of unissued stock might have merit.

In *LaHue,* at page 776, we said, "one may be a stockholder for stockholder derivative suit purposes if he holds a mere equitable interest in the stock." However, the use of the principle of equitable ownership in support of such an action is very restricted. *See* 13 W. Fletcher, *Corporations* § 5976, at 203 (1984).[2] Mr. Bolt, having invested nothing in Mountain Meadows, has no equitable interest in the stock. Therefore, he did not have standing to bring this shareholder derivative action. CR 23.1.

Ideal Basic in its answer counterclaimed for payment of stumpage removed by Mountain Meadows from the Evans

---

[2]The authors note that possession of stock certificates is not indispensable to a derivative action, *e.g.,* stock held in a margin account with a broker entitles the customer to bring such an action as equitable owner. However, one who has an interest in an estate as a statutory distributee is not an equitable owner entitled to bring a derivative action. Neither is one of several beneficiaries of an active trust entitled to bring a derivative action on behalf of a corporation whose stock is held in trust. W. Fletcher § 5976, at 203, and cases cited in footnotes thereto.

property. On appeal it contends the court erred in failing to award it judgment against Mountain Meadows in the amount of $2,557 for stumpage removed. We agree.

Since Mountain Meadows and Mr. Bolt failed to respond to this issue, if Ideal Basic established a prima facie case for breach of the stumpage agreement, it is entitled to a recovery. *Aquarian Found. v. KTVW, Inc.*, 11 Wn. App. 476, 478–79, 523 P.2d 969 (1974). The record shows: (1) there was a stumpage agreement between Ideal Basic and Mountain Meadows; (2) no stumpage payments were made; and (3) 85,250 board feet of timber valued at $2,557 were removed from the property between January and March of 1976. Even though this evidence was admitted, the trial court entered no findings of fact nor conclusions of law regarding the counterclaim. In light of the testimony and exhibits, it appears the court's failure to decide this issue was mere oversight. Ideal Basic has established a prima facie case for recovery. Therefore, we remand for judgment accordingly.

While we have resolved the dispositive issue, we believe it necessary to deal with an issue raised by Paul Hurn which may have an effect upon other pending litigation. Mr. Hurn contends the court erred in entering findings concerning an indemnity agreement between himself and Mr. Bolt. We agree.

Immediately preceding trial, the court severed "the matters concerning the Flagstaff case" and intercorporate fighting. Part of the consideration allegedly given by Mr. Bolt to Paul Hurn for the indemnity agreement was the Flagstaff lease. The written indemnity agreement was not admitted into evidence, but the court, at the close of trial, nevertheless considered it to be admitted. In light of this record, the validity of the indemnity agreement should not have been decided in this case. In fact, that agreement is the subject of another lawsuit.

Reversed and remanded.

McINTURFF and THOMPSON, JJ., concur.

Reconsideration denied May 29, 1985.

Review denied by Supreme Court September 6, 1985.