[No. 12991-8-III.   Division Three.   June 23, 1994.]

JAMES A. ADAMS, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.

*Christine O. Gregoire, Attorney General,* and *Dennis J. Beemer, Assistant,* for appellant.

MUNSON, J. — The Department of Labor and Industries of the State of Washington appeals a judgment on a jury verdict. It contends the trial court erred both in failing to direct a verdict in its favor and in instructing the jury. We affirm.

On April 16, 1979, James A. Adams injured his knee while working for Custom Masonry as a hod carrier. On April 27, he filed an application for workers' compensation benefits with the Department, which allowed the claim. Between 1979 and 1984, he had several surgeries on the knee. On November 20, 1985, the Department found he was employable and terminated his time-loss benefits effective October 31, 1985; however, the claim remained open for authorized treatment.

Mr. Adams began working as a cement finisher for Winkler Construction Company in early August 1986. He stated

the work caused pain and swelling in his knee and he took the job only because he needed to feed his family. He did not seek medical attention. Concrete work is seasonal in Spokane, and Mr. Adams worked full time through November 5 when the winter weather ended the season.

On October 30, 1986, the Department found Mr. Adams permanently partially disabled, awarded him benefits, and closed the claim. He protested. During the seasonal off-season, he sought time-loss benefits; the Department found he was capable of work and refused to pay. He returned to work for Winkler on April 4, 1987, and worked until June 26 when a truck backed into him reinjuring his knee. He filed a claim for the new injury which was allowed by the Department. On July 23, 1987, he returned to work full time as a cement finisher for Winkler.

The Department affirmed its October 1986 closure on August 14, 1987. Mr. Adams appealed to the Board of Industrial Insurance Appeals which affirmed the closure of the claim. He then appealed the Board's decision to superior court. The jury returned a verdict finding him totally disabled on August 14, 1987, when the Department closed the claim; the jury also found him totally disabled for the period from October 31, 1985, to August 14, 1987. He was awarded time-loss benefits for the periods he was unemployed between October 31, 1985, and August 14, 1987; he was also awarded pension benefits as of August 14, 1987. The Department has appealed to this court.

The Department contends the trial court erred by not directing a verdict in its favor. It also contends the court erred in failing to give proposed jury instructions stating Mr. Adams was not totally disabled as a matter of law.

Determining when a worker is incapable of performing any work at any gainful occupation is an old problem. Our Supreme Court noted 52 years ago:

> The courts have found great difficulty in defining what is meant by incapacity to perform any work at any gainful occupation, and equivalent expressions used in workmen's compensation acts. They agree that they do not mean that the

workman must be absolutely helpless or physically broken and wrecked for all purposes except merely to live.

*Kuhnle v. Department of Labor & Indus.*, 12 Wn.2d 191, 197, 120 P.2d 1003 (1942).

The fact Mr. Adams was actually doing the work despite his doctor's orders appears to present a new wrinkle to the old problem. Here, Mr. Adams was gainfully employed as a cement finisher and was performing the work. In arguing that Mr. Adams could not, as a result, be totally disabled, the Department relies heavily on *Turner v. Department of Labor & Indus.*, 41 Wn.2d 739, 251 P.2d 883 (1953). Mr. Turner was seriously injured in a work related accident. Despite his injuries, he obtained work as a millwright and was working when the Department closed his claim.

Two months after his claim was closed, Mr. Turner appealed. He alleged his condition had worsened and argued he was permanently totally disabled. He argued he had been able to maintain his employment only because a gracious foreman had given him breaks. *Turner*, at 744. On appeal, the Supreme Court held Mr. Turner was not totally disabled as a matter of law because he was steadily employed on the termination date. *Turner*, at 743. In reaching its conclusion, however, the Supreme Court noted there was no evidence Mr. Turner's employment "caused him serious discomfort or pain or that his life or health was endangered thereby." *Turner*, at 743.

In contrast to *Turner*, two orthopedic surgeons testified continued employment as a cement finisher would aggravate Mr. Adams' injuries and cause his knee to "wear out" faster. Thus, here, there is evidence to support the jury verdict. No contradictory evidence was presented by the Department. The Supreme Court noted in *Kuhnle*, the statute requires a "practical and reasonable interpretation'". *Kuhnle*, at 198 (quoting *Moore v. Peet Bros. Mfg. Co.*, 99 Kan. 443, 162 P. 295 (1917)). If total disability does not require that a worker be absolutely helpless or physically broken, we do not believe the Legislature intended to deny benefits where a worker can perform the work only by aggravating an existing injury and

endangering his health. The fact an injured worker resumes work contrary to his doctor's orders should not preclude a finding of total disability as a matter of law. Rather, it should be one of the facts considered by the jury in determining whether the worker is "capable" of doing the work.

The trial court correctly denied the Department's motion for a directed verdict.

■■ The Department contends the trial court erred by improperly defining total disability for the jury. "Permanent total disability" is defined in RCW 51.08.160; the relevant portion states: "'Permanent total disability' means . . . [a] condition permanently incapacitating the worker from performing any work at any gainful occupation." While temporary total disability is not defined by statute, the character of permanent total disability and temporary total disability is the same; the only difference is the duration of the disability. *Bonko v. Department of Labor & Indus.*, 2 Wn. App. 22, 25, 466 P.2d 526 (1970). Instruction 10 defined total disability:

> Total disability is an impairment of mind or body which renders a worker unable to perform *or obtain* a gainful occupation with a reasonable degree of success or continuity. It is the loss of all reasonable wage earning capacity.

> A worker is totally disabled if unable to perform *or obtain* regular gainful employment within the range of his or her capabilities, training, education and experience. A worker is not totally disabled solely because of inability to return to his or her former occupation. However, total disability does not mean that the worker must have become physically or mentally helpless *or must perform employment which causes serious discomfort or pain, or endangers his life or health.*

> If, as a result of an industrial injury, a worker is able to perform only special work not generally available, then the worker is totally disabled, unless the Department shows that some special kind of work which he or she can perform is available to the worker on a reasonably continuous basis.

> Total disability is permanent when it is reasonably probable to continue for the foreseeable future.

> Temporary total disability differs from permanent total disability only in its expected duration.

(Italics ours.) The Department contends the emphasized portions were erroneous. First, the Department argues the inclusion of the words "or obtain" was error because the inability to

obtain work is not a disability. Our Supreme Court recently addressed this very issue in *Leeper v. Department of Labor & Indus.*, 123 Wn.2d 803, 872 P.2d 507 (1994). The court held the phrase "or obtain" was properly included in a jury instruction on the test for total disability. *Leeper*, at 817.

The Department also argues the court further erred in instruction 10 by stating "total disability does not mean that the worker . . . must perform employment which causes serious discomfort or pain, or endangers his life or health." RCW 51.08.160 speaks of a condition incapacitating the worker from performing work at a gainful occupation. Pain or discomfort which does not incapacitate a worker would not be a total disability. Likewise, the mere fact a worker was employed in an occupation which posed a danger to his life or health would not constitute disability. However, when the only employment to which an injured worker is suited causes severe pain because of an impairment, or when the worker's life or health are endangered because of an impairment, the worker would be totally disabled.

In reviewing the adequacy of jury instructions, this court must look at the instructions as a whole. *Caruso v. Local 690, Int'l Bhd. of Teamsters*, 107 Wn.2d 524, 730 P.2d 1299, *cert. denied*, 484 U.S. 815 (1987). The test for determining whether jury instructions are misleading is not a matter of semantics, but whether the jury was misled as to its function and responsibilities under the law. *State v. Hayes*, 73 Wn.2d 568, 572, 439 P.2d 978 (1968); *State v. Brown*, 29 Wn. App. 11, 18, 627 P.2d 132 (1981). In looking at instruction 10 as a whole, we believe it fairly instructed the jury. The instruction states total disability "is the loss of all *reasonable* wage earning capacity". (Italics ours.) It was the province of the jury to determine if Mr. Adams' pain and the risk to his health made continued employment unreasonable; there is no evidence the jury was misled. The court did not err by giving instruction 10.[1]

---

[1]Although we find the instruction adequate in this case, we do not mean that as an endorsement of the language used in the instruction, or as a suggestion that the instruction could not be improved.

■ The Department makes the related argument that the trial court erred in refusing to give its proposed instruction defining total disability. The only significant difference between the instruction proposed by the Department and the instruction given is the language which the Department contended was erroneous. Even if the Department's proposed instruction may have more clearly stated the law, the instruction given by the court adequately informed the jury. The court did not err in refusing to give the proposed instruction. *Couch v. Mine Safety Appliances Co.*, 107 Wn.2d 232, 243, 728 P.2d 585, 78 A.L.R.4th 139 (1986).

Affirmed.

THOMPSON, C.J., and SWEENEY, J., concur.

Review granted at 125 Wn. 2d 1020 (1995).