[No. 62175-6.    En Banc.    November 22, 1995.]

James A. Adams, *Respondent*, v. The Department of
Labor and Industries, *Petitioner*.

*Christine O. Gregoire, Attorney General,* and *Jacquelyn R. Findley, Assistant,* for petitioner.

*Stiley & Associates,* by *Patrick K. Stiley*; and *Mark C. Prothero,* for respondent.

JOHNSON, J. — This case requires us to decide whether a worker is not disabled as a matter of law because he is actually working. The Department of Labor and Industries (Department) seeks review of a court of appeals decision affirming a jury verdict that James Adams was permanently and totally disabled. We affirm.

On April 16, 1979, James Adams injured his left knee while working as a hod carrier for Custom Masonry and filed an industrial insurance claim. From June 1979 through January 1980, Adams had three surgeries on the knee. He received vocational rehabilitation training in welding, but continued to have knee problems and was unable to work.

On May 25, 1982, the Department issued an order awarding Adams a permanent partial disability award. Adams appealed, and the parties stipulated to reopening the claim. In 1984, Adams had another surgery on the knee. His surgeon recommended that he refrain from work requiring deep knee bending, kneeling, crawling, or climbing. Adams initially received additional vocational counseling, but in July 1985, the Department found he was employable as a muffler installer and declined to offer further services. On November 20, 1985, the Department terminated Adams' time-loss benefits. Adams moved for reconsideration.

On August 1, 1986, Adams took a job doing cement work on curbs and sidewalks. At this time, Adams was about forty-nine years old, was married, and had one child and two stepchildren at home. He had an eighth-grade education, but tested at a fourth-grade level. He testified that he took the job, despite his doctor's advice, because he needed the money to feed his family. According to Adams, the work caused severe pain and swelling. Although he was laid off in the fall, Adams resumed this work during the 1987 construction season.

On October 30, 1986, the Department found Adams to be permanently partially disabled, made an award, and closed the claim. Adams asked for reconsideration, and when denied, appealed to the Board of Industrial Insurance Appeals (Board). The Board remanded Adams' case to the Department for reopening, but on August 14, 1987, the Department issued an order adhering to its October 1986 order. Adams again appealed.

In August 1987, Adams saw a psychiatrist/neurologist for evaluation. The doctor found Adams to be suffering from depression causally related to the knee injury.

The administrative hearing on Adams' appeal was held in the spring of 1988. The hearing examiner issued a proposed decision finding: (1) Adams was not totally disabled for the time he did not work[1] during the period between the Department's termination of benefits in November 1985 until the final determination in August 1987; (2) Adams did not have a psychiatric condition stemming from his industrial injury; and (3) Adams was not permanently and totally disabled as of August 1987.

Adams appealed to the Board, assigning error to the three findings of fact. The Board denied Adams' petition for review, and Adams appealed to the superior court.

A jury trial was held June 14 and 15, 1990. Pursuant to RCW 51.52.110 and .115, evidence in the form of the certified Appeal Board record was read to the jury. The Department moved for a directed verdict as to each of the three issues. The trial court denied the motion, ruling each was a question of fact for the jury. The jury agreed with the Department as to Adams' psychiatric condition, but found Adams to be permanently and totally disabled.

The Department appealed. Adams failed to file a responsive brief and was precluded from presenting oral argument. The court of appeals nonetheless affirmed the trial court, *Adams v. Department of Labor & Indus.*, 74 Wn. App. 626, 875 P.2d 8 (1994), and the Department now

---

[1]Adams had not asked for any benefits for the time he actually worked.

appeals to this court. It contends the court of appeals should have reversed because: (1) Adams did not file a responsive brief; (2) Adams was not disabled as a matter of law because he was actually employed during a portion of the period in question; and (3) Adams produced insufficient evidence to prove his disability.[2]

The Department first argues the court of appeals should have reversed the trial court because Adams failed to file a responsive brief, thereby requiring the court of appeals to restrict its review to whether the Department made a prima facie showing of reversible error.

When a party fails to file a brief, RAP 11.2(a) requires that party to be barred from presenting oral argument. The court of appeals therefore acted properly in precluding Adams from presenting oral argument.

In addition to this penalty in cases where the respondent has failed to file a brief, the court of appeals has also limited review to whether the appellant's brief makes a prima facie showing of reversible error. *See, e.g., Hobart Corp. v. North Cent. Credit Servs., Inc.*, 29 Wn. App. 302, 303, 628 P.2d 842 (1981); *State v. Wilburn*, 51 Wn. App. 827, 829-30, 755 P.2d 842 (1988). In at least one case, the court of appeals has applied this same treatment to *issues* to which the respondent has not replied, even though the respondent has filed a brief. *Bolt v. Hurn*, 40 Wn. App. 54, 60, 696 P.2d 1261, *review denied*, 104 Wn.2d 1012 (1985).

This lowered standard of review developed prior to July 1, 1976, under the Court of Appeals Rules on Appeal (CAROA), then in effect. *Wilburn*, 51 Wn. App. at 828. CAROA 41(3) provided: "If the respondent files no brief, the cause will be deemed submitted upon its merits as to him." The Rules of Appellate Procedure, which succeeded CAROA in 1976, contain no comparable provision, but in

---

[2]At oral argument, the Department also contended the trial court erred in instructing the jury on the meaning of permanent total disability. This argument was briefed to the court of appeals, which upheld the instruction. However, the Department did not raise the issue in its petition for review to this court. Therefore, review is precluded under RAP 13.7(b).

some cases the court of appeals continued without comment its earlier treatment of respondents failing to file briefs. *E.g., Hobart,* 29 Wn. App. at 303; *Bolt,* 40 Wn. App. at 60.

In *Wilburn,* however, the court examined the prima facie error doctrine in light of the new rules, and in a split decision, upheld its viability. While it was perhaps understandable that the court was displeased with a county prosecutor's failure to file a brief, the court did not articulate any specific authority for the use of a lower standard. It simply ruled the respondent was obligated to file a brief, and the court could therefore sanction a party failing to file. *Wilburn,* 51 Wn. App. at 829. The dissent argued that although the respondent runs a great risk by not filing a brief, there was no longer any statutory authority for the penalty imposed by the court. *Wilburn,* 51 Wn. App. at 833-34 (Alexander, J., dissenting).

■ We find the dissent more persuasive. A respondent who elects not to file a brief allows his or her opponent to put unanswered arguments before the court, and the court is entitled to make its decision based on the argument and record before it. The court, however, should not confine itself to whether the appellant has presented a prima facie case when the record and their own knowledge of the law permit a fuller review. Under the RAPs, there is no longer a basis for differing standards of review. Even more importantly, the prima facie case rule has the potential for producing an unjust result. The quantity or quality of briefing should not affect the standard of review used by the court.

The Department next contends the trial court erred in not finding as a matter of law Adams was not permanently and totally disabled within the meaning of RCW 51.08.160 because he was actually working at his preinjury job.

■ The industrial insurance statute defines "permanent total disability" as: "loss of both legs, or arms, or one leg and one arm, total loss of eyesight, paralysis or other condition permanently incapacitating the worker from

performing any work at any gainful occupation." RCW 51.08.160. While the statutory language is usually a good starting place for statutory interpretation, we have long recognized the difficulty in applying the above definition to the variety of cases in our courts. *See Leeper v. Department of Labor & Indus.*, 123 Wn.2d 803, 810-11, 872 P.2d 507 (1994). We require trial courts to supplement the statutory definition with case law. *Buell v. Aetna Casualty & Sur. Co.*, 14 Wn. App. 742, 744, 544 P.2d 759 (1976).

■ The definition that has emerged from case law has both a medical aspect—the extent of physical impairment—and an economic aspect—the effect on wage-earning capacity. *Leeper*, 123 Wn.2d at 812. These two aspects are combined in the standard jury instruction that "a worker is totally disabled if unable to perform or obtain regular gainful employment." WPI 155.07 (3d ed. 1989). The extent of physical impairment relates to ability to perform while the effect on wage-earning capacity relates to ability to obtain employment. *See Leeper*, 123 Wn.2d at 814. The resulting definition is

> a hybrid quasi-medical concept in which there are intermingled in various combinations, the medical *fact* of loss of function and disability, together with the inability to perform and the inability to obtain work as a result of [the] industrial injury.

*Fochtman v. Department of Labor & Indus.*, 7 Wn. App. 286, 294, 499 P.2d 255 (1972).

The Department's argument that Adams is not disabled focuses solely on wage-earning capacity, relying almost entirely on *Turner v. Department of Labor & Indus.*, 41 Wn.2d 739, 251 P.2d 883 (1953). The worker in that case, a carpenter, suffered brain damage as a result of a fall, causing headaches, dizzy spells, personality changes, and some loss of hearing, memory, and reasoning skills. *Turner*, 41 Wn.2d at 741. Despite his injuries, the worker took a job as a millwright, and had been working for about nine months when the Department closed his claim. *Turner*, 41 Wn.2d at 742.

The worker appealed the Department's decision to the superior court. *Turner*, 41 Wn.2d at 740. After the case in chief had been read into the record, the Department challenged the sufficiency of the evidence and moved for dismissal. The court granted the Department's motion, and the worker appealed. *Turner*, 41 Wn.2d at 740.

This court affirmed, holding the worker was steadily employed and therefore not permanently and totally disabled. *Turner*, 41 Wn.2d at 743. In so holding, however, the court noted the worker had produced no evidence that "his working caused him serious discomfort or pain or that his life or health was endangered thereby." *Turner*, 41 Wn.2d at 743.

The *Turner* court noted the lack of medical evidence distinguished its case from *Kuhnle v. Department of Labor & Indus.*, 12 Wn.2d 191, 120 P.2d 1003 (1942). *Kuhnle* involved an injured logger who was supervising the operation of a family farm. *Kuhnle*, 12 Wn.2d at 192, 196. Found by the Department to be partially disabled, the logger appealed to the superior court, asserting a permanent total disability. *Kuhnle*, 12 Wn.2d at 192. The court sustained a challenge to the sufficiency of the evidence and the logger appealed. *Kuhnle*, 12 Wn.2d at 192.

In *Kuhnle*, as here, the Department argued the fact the worker was employed was determinative. This court reversed, observing that inability to perform did not mean "that the workman must be absolutely helpless or physically broken and wrecked for all purposes except merely to live." *Kuhnle*, 12 Wn.2d at 197. The court found intermittent or limited earning capacity did not necessarily reduce a total disability to a partial one because a reasonable degree of *continuity* was implied by the statute. *Kuhnle*, 12 Wn.2d at 197 (citing *Green v. Schmahl*, 202 Minn. 254, 256, 278 N.W. 157 (1938)).

Thus, this court's cases—including *Turner*—uniformly support the proposition that permanent total disability is a question involving more than just the worker's employment status on a given day. Providing the

worker produces sufficient evidence of loss of earning capacity and expert medical evidence that working causes serious discomfort or pain or puts his or her life or health in immediate danger, total disability is a question for the jury. Therefore, the trial court in this case correctly rejected the Department's argument that Adams' employment status alone meant he was not disabled as a matter of law based on *Turner*.

The Department also argues, if Adams could be disabled while working, then res judicata principles would prevent the Department from ever terminating his pension, in contravention of RCW 51.32.160. This section, in pertinent part, provides:

> If aggravation, diminution, or termination of disability takes place, the director may . . . readjust the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payment . . . .

> If a worker receiving a pension for total disability returns to gainful employment for wages, the director may suspend or terminate the rate of compensation established for the disability without producing medical evidence that shows that a diminution of the disability has occurred.

This section in no way conflicts with the trial court's ruling. Adams was not employed at the time he began receiving pension benefits. He neither sought nor received benefits for periods during which he actually worked. If he now returns to work, this section will allow the Department to suspend his pension. The Department's argument is not persuasive.

Finally, the Department argues Adams did not produce sufficient evidence that he could not perform light or sedentary work of a general nature, precluding a finding of total disability under *Herr v. Department of Labor & Indus.*, 74 Wn. App. 632, 875 P.2d 11 (1994). We disagree. Although Adams' treating physician, Dr. Brewster, testified Adams was capable of gainful employment within certain

physical limitations, Adams' vocational counselor testified to other limitations. He stated that, in view of Adams' physical *and educational* limitations, his *skills*, his *potential for retraining*, and the *conditions of the general job market*, Adams was not capable of gainful employment in the general labor market with any degree of success and continuity. In view of this evidence, the trial court acted properly in submitting the question of Adams' disability to the jury.

While it may seem anomalous that a worker can be adjudged disabled while working at his or her preinjury job, the purpose behind RCW Title 51 is to insure against the effective loss of wage-earning capacity. *Kuhnle*, 12 Wn.2d at 197. Wage-earning capacity means sustainable wage-earning capacity and working in great pain is not sustainable. While it would be easier for the Department and the courts to set a certain amount of time which would, as a matter of law, establish sustainable wage-earning capacity, such a rule would undoubtedly work an injustice in some cases. The question of disability is better suited to an individualized jury determination than a bright line rule.

We therefore affirm.

DOLLIVER, SMITH, MADSEN, ALEXANDER, and PEKELIS, JJ., concur.

TALMADGE, J. (concurring) — On August 14, 1987, the date the jury determined James Adams was totally disabled for purposes of Washington's Industrial Insurance Act, he was working full time earning $13.72 per hour. (Bd. R. at Ex. 2.) Under the definition of "permanent total disability" contained in RCW 51.08.160, and common sense, the concepts of permanent total disability and full-time employment ordinarily are mutually exclusive. I would prefer to affirm the decision of the Board of Industrial Insurance Appeals, which found Adams was entitled to an award of permanent partial disability on

August 14, 1987, for injuries associated with his knee, and reverse the decision granting him a pension for permanent total disability, but the Department did not preserve the error in the trial court's instruction to the jury.[3]

ANALYSIS

A. Permanent Total Disability Under RCW 51.08.160

The Washington Industrial Insurance Act defines a permanent total disability at RCW 51.08.160 as a condition "permanently incapacitating the worker from performing any work at any gainful occupation." This definition has been construed in numerous Washington decisions and those decisions have effectively become a part of the statutory definition. *Buell v. Aetna Casualty & Sur. Co.*, 14 Wn. App. 742, 544 P.2d 759 (1976).

Our courts have indicated that the worker must be permanently incapacitated from performing any work at any gainful occupation in order to meet the test of RCW 51.08.160. Thus, our courts have formulated a prima facie case of permanent total disability that requires proof (1) the worker was able to work prior to the industrial injury, (2) the worker is unable to perform or obtain work suitable to his or her qualifications and training after the industrial injury, and (3) the incapacity is a result of the industrial injury. *Spring v. Department of Labor & Indus.*, 96 Wn.2d 914, 918, 640 P.2d 1 (1982); *Fochtman v. Department of Labor & Indus.*, 7 Wn. App. 286, 292-93, 499 P.2d 255 (1972); *Allen v. Department of Labor & Indus.*, 30 Wn. App. 693, 638 P.2d 104 (1981). The second element of the test presumes the worker is *unable to work.*

This definition does not require the worker to be physically broken in order to secure an award of permanent total disability. *Kuhnle v. Department of Labor & Indus.*,

---

[3]The Department assigns error to the trial court's denial of its motions for a directed verdict and the court's instruction 10 to the jury on permanent total disability. However, the Department did not properly preserve the error as to instruction 10. The Department does not assign error to the sufficiency of the evidence to support the jury's verdict.

12 Wn.2d 191, 197, 120 P.2d 1003 (1942). Nor does RCW 51.08.160 prevent a worker who can perform the occasional odd job or special work[4] from being found permanently totally disabled. *Kuhnle*, 12 Wn.2d at 198-99; *Fochtman*, 7 Wn. App. at 292; *Spring*, 96 Wn.2d at 919.

However, the ability of a worker injured on the job to do light or sedentary work *precludes* a finding of total disability. In the recent case of *Herr v. Department of Labor & Indus.*, 74 Wn. App. 632, 875 P.2d 11 (1994), the injured worker contracted an occupational disease from his employment. The occupational disease prevented him from returning to work as a machinist. The court of appeals found that when Herr made no effort to establish he could not perform any other gainful occupation, he was precluded from arguing he was permanently totally disabled. In effect, Herr was obliged to demonstrate he could not perform *any* gainful occupation as set forth in RCW 51.08.160. He could not choose simply to insist upon returning to his former occupation. The touchstone for this analysis again was the worker's ability to perform gainful employment.

The general purpose of the Industrial Insurance Act is to insure against the loss of wage-earning capacity. *Leeper v. Department of Labor & Indus.*, 123 Wn.2d 803, 814, 872 P.2d 507 (1994); *Kuhnle*, 12 Wn.2d at 197. A worker is totally disabled if his or her industrial injury has resulted in the loss of all reasonable wage-earning capacity. WPI

---

[4]The court of appeals in *Graham v. Weyerhaeuser Co.*, 71 Wn. App. 55, 856 P.2d 717 (1993), drew a distinction between "general work" and "special work." General work is work (including light and sedentary work) that is reasonably continuous, within the worker's range of capabilities, training, and experience, and generally available on the competitive job market. The court stated that a worker is permanently totally disabled under the statute only if unable to perform general work. *Id.* at 61-63. This court expressed disapproval of the *Graham* formulation of "general work" in *Leeper v. Department of Labor & Indus.*, 123 Wn.2d 803, 817-18, 872 P.2d 507 (1994), noting that the general availability of a category of jobs in the competitive job market fails to address whether a *particular* injured worker can obtain such a job. However, the distinction drawn in *Graham* between "special work" discussed in cases like *Wendt v. Department of Labor & Indus.*, 18 Wn. App. 674, 681, 571 P.2d 229 (1977), and *Allen v. Department of Labor & Indus.*, 16 Wn. App. 692, 694, 559 P.2d 572 (1977), and more continuous or general work is useful.

155.07 (3d ed. 1989). Clearly, this capacity is ordinarily not lost where the worker is fully employed.

This court has recognized that full-time gainful employment and permanent total disability ordinarily are mutually exclusive. In *Turner v. Department of Labor & Indus.*, 41 Wn.2d 739, 251 P.2d 883 (1953), we held that a worker who previously sustained an industrial injury and was working as a millwright in a saw mill when the Department closed his claim was not totally and permanently disabled. We said:

> Appellant was steadily employed on the date of the supervisor's order (March 17, 1950) and had been so employed for approximately nine months prior thereto. As a matter of law, therefore, he was not permanently totally disabled on the terminal date for fixing appellant's compensation in this case. RCW 51.08.160. *He had steady employment*; he was not merely fitted to do odd jobs or special work not generally available.

(Court's emphasis.) *Turner*, 41 Wn.2d at 743. On the basis of *Turner* and *In re Sterling J. Taylor*, BIIA Dec. 19,725 (1965), the Board of Industrial Insurance Appeals found that Adams was not permanently and totally disabled where he was fully employed. (Bd. R. at 31-35.)

The *Turner* court provided two exceptions to the rule that employment and permanent total disability are incompatible. The worker had to produce "evidence that his working caused him serious discomfort or pain or that his life or health was endangered thereby." *Turner*, 41 Wn.2d at 743. These exceptions are ill-formed, but have found their way into the court's instruction 10.[5] The court of appeals also found these exceptions to be a problem:

---

[5]Instruction 10, based on WPI 155.07, states in pertinent part:

[T]otal disability does not mean that the worker must have become physically or mentally helpless or must perform employment which causes serious discomfort or pain, or endangers his life or health.

(Clerk's Papers at 63.)

Pain or discomfort which does not incapacitate a worker would not be a total disability. Likewise, the mere fact a worker was employed in an occupation which posed a danger to his life or health would not constitute disability. However, when the only employment to which an injured worker is suited causes severe pain because of an impairment, or when the worker's life or health are endangered because of an impairment, the worker would be totally disabled.

*Adams v. Department of Labor & Indus.*, 74 Wn. App. 626, 631, 875 P.2d 8 (1994).

I sincerely doubt that if the worker produced evidence of some unspecified level of discomfort while employed, the worker could be found permanently totally disabled though fully employed in general work. From a practical standpoint, *Turner* offers no guidance whatsoever as to what "serious discomfort or pain" endured by a fully employed worker will be sufficient to render that worker a proper candidate for a pension. This is a particularly troublesome standard as pain is completely subjective in nature, unique to the individual's personal tolerance. Moreover, even if there is medical testimony that an injured worker's condition *might* become disabling at some indefinite point in the future, that is an intangible basis for awarding a pension to a fully employed worker *now*.

The majority has enunciated a standard for these exceptions that the worker must produce "sufficient" evidence of loss of earning capacity and expert testimony that working causes serious discomfort or pain, or puts the worker's life or health in immediate danger. Majority at 232. This is an improvement over the vague exceptions in *Turner*, but the majority's test does not address the general rule in *Turner*, or the exceptions, with sufficient precision to avoid a claim of permanent total disability in many situations where the worker has a permanent partial disability and returns to work.

The general rule in *Turner* is that employment and permanent total disability are incompatible. The two excep-

tions to the rule are better stated in the following fashion: (1) a worker may be totally disabled, though employed, if the worker is unable to perform all other gainful employment and the present employment involves serious discomfort or pain which would disable a reasonable person from performing it; or, (2) a worker may be totally disabled, though employed, if the worker is unable to perform all other gainful employment and there is reasonable certainty that the continuation of the present employment places the worker in immediate risk to life and health. These exceptions must ordinarily be proven by expert testimony.

These exceptions make good sense from a policy standpoint. The first exception ensures that the worker who is truly disabled but courageously works in the face of pain that would disable a reasonable person is covered by RCW 51.08.160. The second exception preserves the safety focus of Title 51. A worker who is truly disabled but continues to work at his or her risk is disabled; a worker need not put life and limb in immediate jeopardy as a condition of employment in Washington.

In the present case, there was substantial evidence to support the view that Adams would be injured if he continued to work.[6] This was enough to sustain the trial court's denial of the Department's motion for judgment as a matter of law as such a motion may be granted only if there is no evidence or reasonable inference from that evidence which would sustain a verdict on the issue in question for the nonmoving party. *Davis v. Globe Mach. Mfg.*

---

[6]Dr. Robert Brewster, Adams' attending physician, testified that if Adams continued to work in construction his knee would wear out sooner and his arthritic condition would progress faster. Ultimately, he might require a total knee replacement. (Bd. R. (Brewster) at 19-20.) Dr. Brewster, however, did not testify that Adams was incapable of reasonably continuous gainful employment. (Bd. R. (Brewster) at 29.) Dr. Dean Luther, an orthopedic surgeon, testified Adams' knee was not worn out when he was seen in July 1987, and would not be worn out absent another ten to fifteen years of "hard use." (Bd. R. (Luther) at 25-26, 34.)

*Co.*, 102 Wn.2d 68, 684 P.2d 692 (1984). There was also evidence of Adams' pain and discomfort.[7]

The court's instruction 10 to the jury, which pertained to the definition of permanent total disability, erroneously described the two exceptions to *Turner*'s general rule under the majority's test or the test articulated here, but the Department did not properly preserve the error for review. The Department was obliged to clearly articulate the error in the instruction by its objection. CR 51(f); *Van Hout v. Celotex Corp.*, 121 Wn.2d 697, 853 P.2d 908 (1993) (appellate court may consider a claimed error in an instruction only if the appellant's objection to an instruction raised the specific issue), and the appellant proposed a proper formulation of the instruction; *Crossen v. Skagit County*,

---

[7] I am more dubious about evidence of Adams' pain. The Board Decision and Order indicates that Adams' work history would not have permitted him to come within the *Turner* "serious pain or discomfort" provision in any event:

> In the *Turner* case, discussed *supra*, the Court does point out that no evidence was produced showing that the claimant's work caused him serious discomfort or pain or endangered his life or health. In *Taylor*, the Board discussed evidence on that issue, but was convinced that the worker was exaggerating the facts. Thus, there is no case where either the Court or the Board have found sufficient facts to conclude that a worker is entitled to a pension even though gainfully employed on the terminal date. Nor is there any case explaining the circumstances under which the Court or the Board would envision an employed worker qualifying for a pension where "the work caused serious discomfort or pain or endangered life or health."

> After carefully reviewing the record, it is the opinion of the undersigned that the facts here do not fall within the above language. As was the case in *Taylor*, I believe that the severity of Mr. Adams' pain and suffering is most accurately reflected by his work history. During the two lengthy periods in which the seasonal concrete construction employment was available, Mr. Adams was a "good worker," and never missed work due to his injury. The *only* time he was unemployed was during seasonal lay-off. In addition, one of the owners, Mr. Winkler, never observed Mr. Adams to have any difficulty whatsoever, nor did he observe any pain behavior. The only person, other than Mr. Adams, commenting on his work performance was Mr. Battershell, his supervisor. Mr. Battershell knew Mr. Adams to be a good worker, and stated that he may have complained about his knee on a couple of occasions and that he (Mr. Battershell) may have observed knee swelling on one occasion. Mr. Battershell noted this to be nothing out of the ordinary for a concrete worker. As stated above, Mr. Adams was available for work, and told his employer that he would continue to be available.

(Board's emphasis.) (Bd. R. at 34-35.)

100 Wn.2d 355, 361, 669 P.2d 1244 (1983). The Department did not do so.[8] Review of this issue is foreclosed.

## B. Application for Unemployment Compensation

I am also puzzled why the Department did not raise the question of Adams' application for unemployment compensation to the court of appeals or this court. Adams applied for unemployment compensation on August 3, 1987. In his application, Adams denied having applied for or presently receiving industrial insurance benefits. He further denied having any limiting physical conditions. He stated he was able to accept full time work immediately and sought work as a hod carrier or laborer. (Bd. R. at Ex. 3.) He did not advise his attending physician or vocational counselor of this fact. (Bd. R. (Brewster) at 29; Bd. R. (Cutler) at 65.)

A worker who applies for unemployment compensation certifies that he or she is "able to work." RCW 50.20.010(3). A worker is, in fact, disqualified from unemployment compensation if he or she is receiving industrial insurance benefits. RCW 50.20.085. The converse is also true. A worker who is seeking unemployment benefits while receiving industrial insurance benefits for permanent or temporary total disability is not totally disabled under Title 51 RCW.

In the context of voluntary withdrawal from employment, a worker who has voluntarily retired from work is ineligible for temporary or permanent total disability benefits. *Weyerhaeuser Co. v. Farr*, 70 Wn. App. 759, 855 P.2d 711 (1993), *review denied*, 123 Wn.2d 1017 (1994); *Kaiser Aluminum & Chem. Corp. v. Overdorff*, 57 Wn. App.

---

[8]The Department's objection to instruction 10 focused principally upon the question of the availability of employment in the job market. (Report of Proceedings at 86-87.) Indeed, this was the principal thrust of its argument to the court of appeals as well. This issue was resolved in *Leeper*, 123 Wn.2d 803.

The Department did touch upon one of the *Turner* exceptions in its objection to instruction 10, but it was the Department's position below that this court did not create any exceptions to the general rule in *Turner*. (Report of Proceedings at 88-89.) The Department's proposed instructions on permanent total disability also omitted any reference to the *Turner* exceptions. (Clerk's Papers at 41, 44-45.)

291, 788 P.2d 8 (1990). The court of appeals in *Overdorff* stated:

> The ultimate goal is to provide temporary financial support until the injured worker is able to return to work. This goal cannot come to fruition when a worker voluntarily removes himself from the active labor force and opts, despite the presence of sufficient physical capacities, to decline further employment activity. In this sense, it is implicit an individual suffer a potential adverse economic impact before he may qualify for time loss benefits. Mr. Overdorff, by his own admission, was not actively engaged in the work force after his retirement and up to the point of his surgery. Thus, he lacked the requisite adverse economic impact, *i.e.*, lost wages or income, to warrant the award of time loss benefits.

*Overdorff*, 57 Wn. App. at 296.

Where a worker has, by his own admission, reentered the work force, he or she must be ineligible for permanent or temporary total disability benefits. But where the Department did not raise this issue in its petition for review,[9] we are foreclosed from considering the issue on review. RAP 13.7(b); *State v. Collins*, 121 Wn.2d 168, 178-79, 847 P.2d 919 (1993).

## CONCLUSION

RCW 51.08.160 defines permanent total disability under the statute as disability from all gainful employment. A prima facie case under RCW 51.08.160 requires proof that the worker is *unable to work*. It offends common sense that a person can be disabled from all gainful employment when that person is, in fact, *gainfully employed on a full-time basis unless* the individual is truly disabled and through a herculean effort continues on the job.[10] Ordinarily, a worker who is fully employed cannot be totally

---

[9]The Department-proposed instruction 15 did raise this question in the trial court.

[10]Should a worker's condition of permanent partial disability as a result of the industrial injury worsen or become aggravated, he or she can always ask the Department to reopen the claim. RCW 51.32.160. The worker could then be

disabled absent specific proof of the two exceptional circumstances set forth in *Turner*. Moreover, a worker cannot simultaneously seek permanent total disability status with the Department of Labor & Industries while certifying to the Department of Employment Security that he or she is capable of working. The Department did not properly preserve these errors for review so that the judgment on the verdict of the jury must be affirmed.

DURHAM, C.J., and GUY, J., concur with TALMADGE, J.

found, upon appropriate medical and vocational testimony, to be permanently totally disabled.