# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2017 SEP 18 AM 8:47
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

| | | |
|---|---|---|
| T-MOBILE USA, INC., a Delaware corporation, | ) ) ) | No. 75208-1-I |
| Appellant, | ) ) ) | DIVISION ONE |
| v. | ) ) ) | |
| PLATINUMTEL COMMUNICATIONS, LLC, a Delaware corporation, | ) ) ) | UNPUBLISHED OPINION |
| Respondent. | ) ) ) | FILED: September 18, 2017 |

BECKER, J. — After declaring respondent Platinumtel in default for failing to pay amounts owed under a contract, T-Mobile filed an action for replevin and injunctive relief to secure collateral in which it claimed a security interest. The trial court denied the requested relief and entered a judgment for attorney fees in favor of Platinumtel. On appeal, T-Mobile contends the trial court erred in entering a judgment on attorney fees while the parties' underlying dispute remained pending in arbitration. Because T-Mobile fails to establish any reversible error, we affirm.

## FACTS

Appellant T-Mobile USA Inc. is a Delaware corporation with corporate headquarters in Bellevue. Respondent Platinumtel Communications LLC (Ptel)

is a prepaid wireless service provider with its principal place of business in Illinois.

In 2012, T-Mobile and Ptel executed a Wholesale Supply Agreement (Agreement). Under the Agreement, T-Mobile supplied Ptel with wireless cellular network services that Ptel resold to its prepaid wireless customers around the country.

The Second Amendment to the Agreement granted T-Mobile a security interest in specified collateral, including all of Ptel's equipment, supplies, fixtures, and tangible property. The collateral also included all of Ptel's interest "in the right to receive payment of money . . . all accounts, contract rights, chattel paper, documents of title, letters of credit, . . . securities, deposits, insurance policies, licenses, leases, contracts, judgments, . . . and . . . any and all funds in each bank account owned or controlled by Platinumtel." Upon default, which included Ptel's "failure to make any payment due" under the Agreement, T-Mobile could foreclose on the collateral and "take possession of the collateral pursuant to judicial process."

Section 14.12(a) of the Agreement required the parties to submit "disputes related to the Service, Network, Invoices or billing" to arbitration. Section 14.13 provided that "the prevailing party in any dispute under this Agreement will be entitled to recover its costs, including reasonable attorneys' fees."

In 2015, T-Mobile alleged that Ptel was in default for failing to make more than $3 million in payments for network services. At some point, T-Mobile cut off

services to Ptel, which then announced to its customers that it was going to discontinue offering wireless services.

On February 1, 2016, T-Mobile filed a Complaint for Replevin and Injunction, seeking an order of replevin putting T-Mobile "in immediate possession of the Collateral" and a temporary restraining order and further injunctive relief preventing Ptel "from using, damaging or disposing of the Collateral" before T-Mobile could gain possession. T-Mobile also filed a Motion for Order to Show Cause regarding the replevin and injunction claims. Simultaneously, T-Mobile commenced an arbitration proceeding under the terms of the Agreement to address Ptel's failure to pay.

On February 2, 2016, the trial court issued a temporary restraining order directing Ptel to protect and preserve the collateral and an order to show cause why a writ of replevin should not be issued.

In support of its motion for an order to show cause, T-Mobile asserted that the replevin statute, chapter 7.64 RCW, provided the judicial process for a secured party to take possession of the collateral identified in the Agreement. T-Mobile further contended that under the Uniform Commercial Code, Ptel was required to identify and assemble the collateral and make it available to T-Mobile. T-Mobile asserted that it was unsure of the value of the collateral but estimated it "may exceed $10,000.00" and posted a $10,000 bond.

In response, Ptel raised several procedural challenges to T-Mobile's replevin claim and to the issuance of the temporary restraining order. Ptel

suggested that T-Mobile's request for an order of replevin and "a judgment in an amount to be proven at trial" indicated an improper attempt to litigate the financial dispute simultaneously in two forums.

Ptel disputed T-Mobile's allegations that it was going out of business. Ptel acknowledged that T-Mobile had forced it to discontinue service from T-Mobile but claimed that it retained several employees and was actively seeking another carrier. Ptel maintained that in any event, T-Mobile had failed to establish that Ptel was attempting to place its assets out of the reach of creditors.

Ptel also claimed that T-Mobile had not demonstrated any right to foreclose judicially on the collateral while the disputed question of whether a debt was owed would be contested in the arbitration proceeding. Ptel contended that much of the collateral that T-Mobile was seeking, such as Ptel's "right, title, and interest in the right to receive payment of money," did not involve assets that could be placed into T-Mobile's possession by means of a writ of replevin. Ptel argued that by requesting in its proposed replevin order that Ptel also turn over financial statements, credit statements, checking accounts and activities—essentially all of Ptel's corporate records—T-Mobile was not seeking relief properly available through replevin, but rather was attempting to undertake prejudgment discovery for purposes of collection in the event that it eventually obtained a judgment.

Both parties appeared at the show cause hearing on March 31, 2016, the day that the temporary protection order expired. T-Mobile maintained that Ptel's

undisputed default of nonpayment "triggers the right to replevin" and "entitles us to marshal and hold that collateral" pending any determination in the arbitration of whether either party had breached the Agreement. T-Mobile argued that it was also entitled to injunctive relief in conjunction with a writ of replevin in order to prevent Ptel from dissipating its assets during the arbitration. T-Mobile claimed that without an injunction, Ptel might "siphon[ ] away [incoming funds from customers] either for personal use [or] for other business operations or whatever they want to do."

In response to the court's question about what it expected the court to do with assets such as Ptel's bank accounts and accounts receivable, T-Mobile acknowledged "you can call it impounding" and explained that "pending an award by the arbitrator, we are looking to replevin [sic] those assets to have them in a safe place and to prevent, via an injunction, them from dissipating those assets."

Among other things, Ptel disputed T-Mobile's claimed right to immediate possession of collateral, arguing that it was entitled to raise defenses and claim offsets as to the alleged default and that those issues involved disputes about billing and invoicing that the arbitrator had to decide. Ptel also maintained that T-Mobile had failed to demonstrate irreparable harm that would warrant entry of a preliminary injunction.

On April 1, 2016, the court denied T-Mobile's motion for replevin and a preliminary injunction.

The court concluded that T-Mobile had failed to meet its burden of demonstrating a well-grounded fear of immediate invasion of its rights under the Agreement that would result in actual and substantial injury. The court found no evidence of Ptel's "current or imminent or likely future dissipation of the collateral as identified in the pleadings."

In denying an order of replevin, the court noted that replevin generally requires the location of property to be specified so that the sheriff can take possession of it. See RCW 7.64.035(2)(b), (c). The court further observed that "'money is not subject to replevin unless marked or designated in some manner so as to become specific'" and that funds in a bank account are not a tangible asset subject to replevin.[1] Under the circumstances, the court concluded that the collateral T-Mobile specified in its proposed order was not subject to replevin:

> Here, the collateral described in Exhibit A to T-Mobile's proposed order to be seized by the Sheriff includes funds in bank accounts, the right to receive money and consideration related to the sale of products and services, i.e., accounts, contract rights, commercial paper, leases, insurance policies, and any proceeds therefrom or from goods or personal property. Even if considered tangible property, the above items are not sufficiently identified to allow the Sheriff to take possession of them. Nor is the location provided of any of the collateral, including the tangible assets, such as furniture.
> For the above reasons replevin is not available.

---

[1] Clerk's Papers at 439 (order denying show cause), quoting 66 AM. JUR. 2D Replevin §§ 9-10, at 504-05 (2001).

On April 5, 2016, Ptel filed a Motion to Fix Fees, Costs, and Enter Judgment. Ptel contended that the trial court had denied the sole relief T-Mobile requested in its complaint, effectively ending the proceeding. Ptel asked the court to enter a judgment for attorney fees under the provision in the Agreement for "the prevailing party in any dispute."

Three days later, on April 8, 2016, T-Mobile filed an amended complaint raising additional claims and requests for relief related to its alleged security interests. On April 11, 2017, T-Mobile filed its opposition to Ptel's motion to fix fees. T-Mobile argued that there could be no "final judgment" and therefore no "prevailing party" for purposes of an attorney fee award, until all claims in court and in the arbitration were resolved. T-Mobile did not discuss the amended complaint.

On April 14, 2017, the trial court entered an order fixing fees and judgment, awarding Ptel attorney fees and costs totaling $32,544.92 and dismissing the claims in T-Mobile's complaint with prejudice. T-Mobile appealed.

After the trial court entered the order fixing fees, the arbitration proceeded. In July 2016, during the course of arbitration, counsel for Ptel withdrew. According to T-Mobile, the arbitration concluded without the participation of Ptel. T-Mobile expects entry of an award in its favor in excess of $4 million.

On appeal, Ptel did not appear or submit a response to T-Mobile's opening brief. Ptel's former counsel, Williams Kastner & Gibbs PLCC, advised the court that they have not represented Ptel since July 2016. Where a

respondent does not file an opening brief, an appellate court "is entitled to make its decision based on the argument and record before it." Adams v. Dep't of Labor & Indus., 128 Wn.2d 224, 229, 905 P.2d 1220 (1995) (rejecting continuing validity of the prima facie case rule when respondent fails to file a brief); see also RAP 11.2(a) (only a party who submits a brief may present oral argument).

On appeal, T-Mobile has raised two assignments of error: (1) the trial court erred in dismissing the case with prejudice "when the claims set forth in the Amended Complaint were still unanswered and unresolved" and (2) the trial court erred in concluding that "replevin is not available unless the secured creditor can identify and locate the collateral with specificity."

Final Judgment

T-Mobile contends the trial court erred by entering a final judgment dismissing T-Mobile's claims with prejudice and awarding Ptel attorney fees. T-Mobile argues that the order denying its motion for replevin and injunctive relief was an interlocutory order and that the trial court could not enter a final judgment and award attorney fees to the "prevailing party" until it had resolved "all of the issues in the lawsuit." Whether a specific statute or contractual provision authorizes an award of attorney fees is a question of law that we review de novo. Kaintz v. PLG, Inc., 147 Wn. App. 782, 785-86, 197 P.3d 710 (2008).

Under the terms of the Agreement, the "prevailing party *in any dispute*" was entitled to recover costs and attorney fees.[2] T-Mobile's arguments rest in part on the erroneous assumption that the definition of "prevailing party" in RCW 4.84.330 necessarily applied to the parties' contractual attorney fee provision.

"By its terms, RCW 4.84.330 applies only to contracts with unilateral attorney fee provisions." Kaintz, 147 Wn. App. at 786. Where, as here, the parties' agreement already contains a bilateral attorney fees provision, "RCW 4.84.330 is generally inapplicable." Hawk v. Branjes, 97 Wn. App. 776, 780, 986 P.2d 841 (1999); see also Walji v. Candyco, Inc., 57 Wn. App. 284, 288, 787 P.2d 946 (1990) (statutory "prevailing party" provision of RCW 4.84.330 does not control over plain language of a contract that contains a bilateral attorney fee clause); Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 494, 200 P.3d 683 (2009) (RCW 4.84.330 is designed to make a unilateral attorney fees provision bilateral when the contracting party receives a final judgment).

T-Mobile does not allege that the parties intended to incorporate the statutory definition of "prevailing party" into the Agreement's attorney fee provision. Given the limited purpose of the proceeding and the trial court's resolution of T-Mobile's claims, a commonsense interpretation supports a

---

[2] (Emphasis added.)

determination that Ptel was the "prevailing party" in this dispute. See Walji v. Candyco, 57 Wn. App. at 288-89.

In any event, T-Mobile's arguments regarding the trial court's authority to enter a final judgment are also unavailing. A final judgment is "'a court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs (and, sometimes, attorney's fees) and enforcement of the judgment.'" State v. Taylor, 150 Wn.2d 599, 602, 80 P.3d 605 (2003), quoting BLACK'S LAW DICTIONARY 847 (7th ed. 1999). Substance controls over form in the determination of a final judgment. Nestegard v. Inv. Exch. Corp., 5 Wn. App. 618, 489 P.2d 1142 (1971). T-Mobile maintains that the order denying its request for replevin and a preliminary injunction was not a final judgment because it did not "resolve all of the issues in the lawsuit" and did not "represent a final determination of the parties' rights." But these contentions elevate form over substance.

In its "Complaint for Replevin and Injunction," T-Mobile alleged two claims and requested an order of replevin and a temporary injunction. The trial court rejected both claims and denied the relief that T-Mobile requested. T-Mobile acknowledged that the merits of Ptel's default would be determined in the pending arbitration that T-Mobile had initiated. Under the circumstances, the trial court reasonably could have concluded that it had resolved all of the issues in the limited, ancillary proceeding before it, warranting entry of a final judgment.

T-Mobile also contends the trial court erred by failing to adjudicate the claims that it raised in an amended complaint. Three days after Ptel filed its motion to fix fees, T-Mobile filed an amended complaint. The amended complaint, now retitled Amended Complaint for Enforcement of Security Interest Pursuant to Uniform Commercial Code, including Taking Possession of Collateral by Replevin and Injunction, removed the independent claim for replevin in the original complaint and specified at least six additional forms of relief related to the alleged collateral. On appeal, T-Mobile asserts that it had an absolute right to file the amended complaint because Ptel never answered the original complaint. See CR 15(a).

Three days after filing the amended complaint, T-Mobile filed its opposition to Ptel's motion to fix fees. Although T-Mobile asserted that it had "ongoing claims for injunctive relief before this Court," T-Mobile's primary argument was that the trial court could not enter a final judgment in the current proceeding while "the central dispute between the parties" remained pending in arbitration: "No final judgment can be entered, and no prevailing party can be identified, until *all* of these claims have been finally determined."

T-Mobile did not specifically refer to the amended complaint or identify any new claims that remained pending before the trial court. In its reply, Ptel referred to the amended complaint and cited authority for the proposition that absent extraordinary circumstances, a party loses the automatic right to amend the complaint after losing a dispositive ruling. But T-Mobile made no effort to

-11-

No. 75208-1-I/12

respond to Ptel's arguments regarding the amended complaint. Nor did T-Mobile call the trial court's attention to any of the specific "live claims" it now asserts the trial court was required to adjudicate before entering a judgment, even though it submitted a responsive pleading after filing the amended complaint. Under the circumstances, we conclude that T-Mobile's vague, passing reference to "ongoing claims for injunctive relief before this Court" was insufficient to preserve the alleged error for review. See Roberson v. Perez, 156 Wn.2d 33, 39, 123 P.3d 844 (2005) (appellate courts generally decline to review issues raised for the first time on appeal).

Replevin

T-Mobile contends that the trial court erred when it denied an order of replevin because it failed to describe the collateral and its location with particularity. T-Mobile asserts that "when a debtor like Ptel is concealing property that rightfully belongs in possession of a secured party like T-Mobile, the secured party is in no position to describe the property and location with exact particularity." T-Mobile cites no authority for this proposition, and the trial court entered no findings to support T-Mobile's factual allegations.

"A replevin action is essentially one to determine title to, or right of possession of, personal property." Apgar v. Great Am. Indem. Co., 171 Wash. 494, 498, 18 P.2d 46 (1933). Chapter 7.64 RCW, Washington's replevin statute, permits a plaintiff to recover possession of personal property after demonstrating, among other things, that "the plaintiff is the owner of the property

-12-

or is lawfully entitled to the possession of the property by virtue of a special property interest, . . . specifically describing the property and interest." RCW 7.64.020(2)(a). A security interest is a special property interest that may support replevin. RCW 7.64.020(2)(a).

But as the trial court noted, the statute also generally contemplates that the replevin order shall "describe the property and its location" and "direct the sheriff to take possession of the property and put the plaintiff in possession." RCW 7.64.035(2); see also RCW 7.74.047 (sheriff's duties upon taking possession of property). The trial court concluded that T-Mobile had failed to describe the collateral sufficiently to permit an order of replevin.

On appeal, T-Mobile does not address the basis for the trial court's replevin analysis or the authority that the trial court relied on. Nor has it presented any meaningful legal analysis or cited any authority to support its conclusory allegations. We therefore decline to consider them. See Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (appellate court will decline to consider issues unsupported by cogent legal argument and citation to relevant authority).

In light of our decision, we deny T-Mobile's request for attorney fees on appeal.

No. 75208-1-I/14

Affirmed.

_Becker, J._

WE CONCUR:

_Trickey, ACJ_          _Leach, J._